# LOUIS J. BEERS, RESPONDENT, v. BROAD AND MARKET NATIONAL BANK OF NEWARK, APPELLANT.

Argued May 5, 1925—Decided December 3, 1925.

1. One who endorses a note without qualification cannot set up, as a defense to a suit brought against him on such endorsement, a collateral oral agreement, by which his liability is less than his contract of endorsement imports.

2. The president of a corporation is, in a legal sense, its agent, and, while he may bind it by contracts in matters arising in the usual course of business, he cannot bind it by a contract made without specific authority from the board of directors, and which is, in a legal sense, a fraud upon the corporation.

On appeal from the Essex Circuit Court.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the appellant, *Charles Stewart* and *Leber & Ruback.*

For the respondent, *Louis J. Beers* and *Merritt Lane.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    This action was brought by the plaintiff to recover from the defendant moneys standing to his account in its bank and which he claimed the defendant had wrongfully refused to pay over to him upon his demand.    The trial resulted in a verdict in his favor for the full amount of moneys claimed by him to be due.    The bank has appealed from the judgment entered upon that verdict.

Stated in the light most favorable to the plaintiff, the uncontroverted facts disclosed this situation: Some time in July, 1914, one Mechanic, who was indebted to the defendant's bank, in a large sum of money, sought to borrow from it the further sum of $5,000 for the purpose of carrying on a series of building operations in which he was then engaged.

The president of the bank, desiring to accommodate Mechanic, but having doubts as to his financial soundness, laid the matter before the plaintiff, who was a director of the institution, and, as a result of their discussion, arranged with him the following plan for Mechanics's benefit: That Mechanic should draw his promissory note for $5,000 to the plaintiff's order; that the plaintiff should endorse this note and deliver it to the bank for discount; that the bank should thereupon advance to Mechanic $5,000, the amount of the note, the money to be handed over to the plaintiff and to be paid out by him in satisfaction of Mechanic's existing or future indebtedness to third parties, subject to the approval of the bank's president, and that the plaintiff should incur no liability to the bank by reason of his endorsement—that is, that he should be under no obligation to pay the note in case Mechanic should fail to do so. Pursuant to this arrangement Mechanic drew a note payable to the order of plaintiff, who then endorsed it and turned it over to the bank. The bank thereupon advanced to him the $5,000 called for by the note, and he paid it out from time to time in satisfaction of Mechanic's debts, with the approval of the defendant company's president. When the note came due it was renewed from time to time, the form of the renewal notes being identical with that of the original one, except as to amounts, the interest accruing being added thereto. Some time in the year 1916 Mechanic, having become insolvent, left for parts unknown. When the last of these renewal notes fell due the plaintiff, at the request of the bank, executed his own note to the bank in the place thereof. The note so given by him was renewed from time to time until February, 1919, when he insisted that he had carried the indebtedness of Mechanic long enough, and refused to again renew the note. In this situation, the bank applied, in payment of the note, moneys which had been deposited by the plaintiff to his own account, and unpaid dividends which had accrued upon his stock in the company, and marked off the note as paid. The moneys thus appropriated are the subject-matter of the present litigation.

On the facts above recited, the defendant's counsel, at the close of the trial, moved for the direction of a verdict in its favor. The motion was denied, upon the theory advanced by counsel for plaintiff, and adopted by the court, that the promise of the president, which was the inducing cause of plaintiff's action in endorsing the original note and its renewals, and in signing renewals in his own name after Mechanic's disappearance, relieved him from legal liability, either as endorser or maker, and that, this being so, the appropriation of the plaintiff's funds to satisfy the last renewal executed by plaintiff alone was without warrant of law.

This theory, in our opinion, is altogether unsound. The original note was negotiable and plaintiff was an endorser upon it without qualification. Section 66 of the Negotiable Instruments act (*Comp. Stat., p.* 3743) declares that every endorser who endorses without qualification warrants to all subsequent holders in due course that the instrument is genuine and in all respects what it purports to be; that he has good title to it; that the instrument is, at the time of his endorsement, valid and subsisting; and, in addition, he engages that if, on due presentment, it be dishonored, he will pay the amount thereof to the holder or to any subsequent endorser who may be compelled to pay it. It is entirely settled that in a suit brought against such endorser, testimony purporting to show that his contract of endorsement was other than what the statute declares it to be is absolutely ineffectual to vary the obligation which the statute imposes upon a person who endorses a promissory note without qualification. Indeed, it is not even admissible for that purpose. *Gerli* v. *National Mill Supply Co.,* 78 *N. J. L.* 1; *S. C., on appeal,* 80 *Id.* 464; *Church* v. *National Newark, &c., Banking Co.,* 97 *Id.* 237. Apparently, the basis of the theory which led the court to refuse the direction of a verdict is that, although this rule is applicable in full force where the suit is brought by the holder to recover against the endorser, yet it does not apply to a suit brought by the endorser against the holder on the basis of a collateral oral contract, although the latter is directly in the face of the written one. In dealing with a

similar proposition, Chief Justice Beasley, in the case of *Johnson* v. *Ramsey,* 43 *Id.* 279, disposes of it as follows: "Now, what seems to me impossible to concede is that on the facts stated there existed two legal contracts, an oral one and a written one. How can this be so when one is contradictory of the other? The written contract bound the first endorser, with reference to the rights of the endorsee, to pay the whole note; the oral contract bound him to pay only half. Such stipulations relate to the same subject-matter, and they cannot stand together. * * *. It seems to me that it would despoil the rule, which is prohibitive of parol evidence in such matters, of much of its practical benefit, if the oral engagement, varient from the written one, can lay a separate ground of action. * * *. The hypothesis on which the rule which excludes on such occasions contemporaneous oral stipulations is the peremptory assumption that the parties at the given time, with respect to the same subject-matter, entered into but a single agreement. * * *. In my opinion, upon principles thoroughly established, under the circumstances stated, the written endorsement constituted the only legal evidence that could be resorted to." The logic of this pronouncement seems to us to be beyond controversy, and we conclude, therefore, that the trial court should have granted the motion to direct a verdict in favor of the defendant.

There is another reason why a verdict in favor of the defendant should have been directed. According to the facts already recited, the plaintiff and the president of the defendant bank entered into an illegal compact, the purpose of which was to take advantage of their official positions to deplete the assets of the bank to the extent of $5,000 in case Mechanic should default in the repayment of the money loaned to him. The compact was illegal, so far as the defendant bank was concerned, for the reason that in making it the president was acting entirely outside the scope of his authority as such officer. His powers over its business and property are strictly those of an agent, delegated to him by the directors, who are the managers of the corporation, and the persons in whom the control of its business and property is

vested. He may bind the corporation by contracts in matters arising in the usual course of business, but beyond this his official position gives him no more control over its property or funds than any other officer or director. *Mausert* v. *Feigenspan,* 68 *N. J. Eq.* 671, 679. So far as the plaintiff was concerned, it is apparent that he understood that the board of directors of the bank would, in all probability, refuse to discount Mechanic's note unless it was endorsed by someone whose financial responsibility was unquestionable. The purpose of the scheme engineered by him and the president was to deceive the board and lead its members to believe that the bank would be protected against loss upon the note by reason of his unqualified endorsement. The result of the scheme, if it had been carried out as the parties to it intended, would have been, as already indicated, the misappropriation of the bank's funds for the benefit of Mechanic as the result of the promise of the plaintiff, exhibited by his endorsement, but which, when made, he never intended to keep. It cannot be doubted that such misappropriation would have been a fraud in a legal sense upon the defendant bank; and, this being so, the plaintiff could take no benefit from his illegal compact.

For the reasons stated, the judgment under review will be reversed.