This bill seeks to restrain the defendant bank from the prosecution of two suits at law against complainants wherein recovery is sought on certain promissory notes, two of which were made by the complainant Giberson to his own order and endorsed by him, and the third of which was made by the complainant Van Cleaf to the order of and endorsed by the complainant Giberson. These notes stand in the position of renewals of a series of notes executed in blank by the complainants and delivered to a bank cashier for the purpose of renewal of certain notes of the complainant held by the bank (not the defendant bank) in which this cashier was employed. This cashier was later discovered to be a defaulter and it was then learned that the notes executed by the complainants in blank and delivered to said cashier had been filled in by him for various amounts and, together with a number of other notes, discounted in the regular course of business at the First National Bank of Spring Lake, one of the defendants herein, but not the employer of the defaulting bank cashier. After the discovery of this situation, the complainants denied liability on the notes and refused to pay them. They alleged that in January, 1923, after the discovery of the cashier's defalcations, the complainants, the defaulting cashier, his brother and the cashier of the defendant Spring Lake bank had a conference at which the defaulting cashier's *Page 504 
brother paid the Spring Lake bank $4,000 in cash on account of complainants' notes held by it, which then aggregated approximately $15,000, and that complainants gave the bank new notes for the balance, which new notes, or renewals thereof, are now the subject of the suits at law. The complainants allege, however, that at this meeting the cashier of the defendant bank agreed on behalf of that bank that in consideration of the execution and delivery of the renewal notes and the payment of $4,000 on account of the old notes, the bank would not look to the complainants for payment, and would not hold them liable, but would look to the brother of the defaulting cashier, who then and there agreed to pay the notes when due; and that thereafter said notes were renewed from time to time by the brother of the defaulting cashier paying the discount and also amounts aggregating over $2,000 in reduction of principal. Later, the brother of the defaulting cashier refused to make further payments, whereupon the suits at law above referred to were instituted. Complainants seek to restrain the prosecution of these suits on the ground that it would be inequitable to permit a recovery against complainants in violation of the agreement of the cashier made, as they allege, on behalf of the bank at the conference above referred to and joined in by the brother of the defaulting cashier. Relief is sought in equity on the theory that such a defense would not be available to the complainants at law on account of the rule of evidence prohibiting parol testimony to vary the terms of a written contract, but that such evidence would be available to the complainants in this court. O'Brien
v. Paterson Brewing Co., 69 N.J. Eq. 117; Gallagher v. Lembeck Betz Eagle Brewing Co., 86 N.J. Eq. 188, and Massopust v.Lembeck Betz Eagle Brewing Co., 94 N.J. Eq. 103, are cited in support of this proposition. On the other hand, it is contended that whatever defenses the complainants have to their alleged liability on these notes are available at law to the same extent as they are in equity.
That the rule prohibiting parol evidence of a contemporaneous oral agreement, such as that alleged here, varying or *Page 505 
altering the terms of a written instrument, would be enforced in all its rigor at law, and that such defense would not there be available to the complainants, is, in my judgment, not open to question. Chaddock v. VanNess, 35 N.J. Law 517; Johnson v.Ramsey, 43 N.J. Law 279; Remington v. Wright, 43 N.J. Law 451;Anthony v. Fritts, 45 N.J. Law 1; Stiles v. Vandewater,48 N.J. Law 67; Foley v. Emerald Brewing Co., 61 N.J. Law 428;Gerli v. National Mill Supply Co., 80 N.J. Law 464; Church v.National Newark Banking Co., 97 N.J. Law 237; Beers v. Broadand Market National Bank, 4 N.J. Adv. R. 32.
It is equally true, however, that numerous cases have arisen in the courts of equity of this state in which parol evidence has been admitted respecting the rights of the parties under written instruments, including promissory notes, which would not have been admitted had the issue been framed at law, the courts in such cases uniformly distinguishing between parol evidence to vary a written instrument and parol evidence showing facts which control its operation. Chetwood v. Brittan, 2 N.J. Eq. 438;Stoutenburg v. Tompkins (1853), 9 N.J. Eq. 332; Sweet v.Parker (1871), 22 N.J. Eq. 453; Van Syckel v. Dalrymple,32 N.J. Eq. 233; affirmed, 32 N.J. Eq. 826; O'Brien v. PatersonBrewing Co., supra; Oak Ridge Co. v. Toole, 82 N.J. Eq. 541;Gallagher v. Lembeck Betz Eagle Brewing Co., supra;Massopust v. Lembeck Betz Eagle Brewing Co., supra.
In Chetwood v. Brittan (1841), supra, the complainant alleged that the bond sued upon at law was executed under an oral agreement to the effect that it was not to be enforced against him personally and sought to restrain the suit at law. The chancellor, while recognizing the rule against admitting parol evidence to vary the terms of a written instrument, said that that was a rule of evidence only and considered that if the facts were as alleged by the complainant, it would be inequitable to permit a recovery by the defendant at law. The law suit was restrained pending final hearing. On final hearing the restraint was dissolved because of lack of proof of the alleged agreement. *Page 506 
In Stoutenburg v. Tompkins, supra, it was held that however closely the court might be disposed to adhere to that rule of evidence, a court of equity must necessarily exercise much more liberality in admitting evidence in order to reach the equity of the case than would be allowed by a court of law, and that there is a difference between introducing parol evidence for the purpose of showing that the writing does not express the true intention of the parties, and introducing it for the purpose of showing the circumstances which make it inequitable and unconscientious that the intention should be carried out. In that case Chancellor Williamson said:
"It is vain to say that a court of equity will refuse its aid to compel a party to do what a conscientious man ought not to ask him to do, under all the circumstances of the case; and yet, by strict application of a principle at law, forbid his proving the circumstances which establish the hardship and inequity of the case."
In Sweet v. Parker, supra, parol evidence was admitted to show a deed absolute on its face, to be a mortgage, and it was held that such evidence was admissible not to establish an agreement to reconvey which equity will enforce, but to establish the true nature of the instrument by showing the object for which it was made.
In Van Syckle v. Dalrymple, supra; affirmed, 32 N.J. Eq. 826,
it was said: "Oral evidence is admissible to reform a written instrument, or to subvert or overthrow it entirely, but not to vary or alter it."
In O'Brien v. Paterson Brewing Co., supra, parol evidence was admitted to show that at the time the note in question was given there was no intention that it should ever be paid by the maker. To the same effect are Oak Ridge Co. v. Toole, supra;Gallagher v. Lembeck Betz Eagle Brewing Co., supra;Massopust v. Lembeck Betz Eagle Brewing Co., supra. See, also, 10 R.C.L. tit. "Evidence" 1018 §§ 210 et seq.
It is urged on behalf of the defendants that equity should follow the law with respect to the application of this rule of evidence and that this is always so where the interpretation *Page 507 
of statutes is involved. Undoubtedly, equity follows the law more circumspectly in the interpretation and application of statute law than otherwise. Birch v. Baker, 81 N.J. Eq. 264.
And where the legislature has prescribed a rule of law which governs the rights of parties, equity, equally with courts of law, is bound and cannot disregard such provisions. Scott v.Waynesburg Brewing Co., 256 Pa. 158; 100 Atl. Rep. 591; Magniac
v. Thomson (U.S.), 15 How. 281; 14 L.Ed. 696; Hedges v.Dixon County, 150 U.S. 182; 37 L.Ed. 1044; 10 R.C.L.tit. "Equity" 382 § 132.
For an interesting discussion of the application of this equitable maxim see 1 Story Eq. Jur. (11th ed.) § 64; 1Willard Eq. Jur. 45; 1 Pom. Eq. Jur. 427.
But equity does not always follow the law. "Throughout the great mass of its jurisprudence, equity, instead of following the law, either ignores or openly disregards or opposes the law." 1Pom. 427.
Acting on more liberal principles, equity often softens the rigor of the law, and although a party's legal rights are, apparently, clear on the face of a written instrument, that does not preclude a court of equity from inquiring into the circumstances under which the document was executed or procured in order to determine whether or not the instrument should be given the effect which at law would necessarily follow from its terms. Such inquiry might indicate a situation which would make it inequitable to enforce legal rights.
In Birch v. Baker, supra, the statute of frauds was involved and it is claimed that here the Negotiable Instruments act is involved, and that, therefore, the provisions of that act should be strictly applied as at law; but I am not called upon to interpret or apply the Negotiable Instruments act here as we are now dealing only with a rule of evidence.
The reasons given by courts of equity for the admission of parol evidence as applied to written contracts where courts of law refuse such admission, are varied, and fine distinctions are drawn between the admission of parol evidence to vary *Page 508 
or alter the terms of a written agreement and parol evidence showing facts which control its operation. Many of these distinctions are, in my judgment, distinctions without a difference, but there is no occasion to quibble about the matter. The truth is that the parol evidence rule has been applied or disregarded in courts of equity as the ends of justice required. Like all other legal rules, it is, in equity, no bar to justice. Volumes have been written to explain or define the suggested distinctions, but as the whole doctrine of equitable jurisprudence has been built up in opposition to and in disregard of legal rules, why should we labor to find a way around or look for a hole in the legal fence? If the ends of justice require it, equity may hurdle as well as go around, and, in my judgment, it is much better to acknowledge this fact than to multiply subterfuge and excuse to explain the application of the parol evidence rule in equity, when it needs no explanation except that justice demands it. Over one hundred years ago (1809) Chief-Justice Marshall, in Bodley v. Taylor, 5 Cranch. 191; 3U.S.L.Ed. 75, with his usual aptness and lucidity, stated the principle underlying the application of this rule in a court of equity as follows: "The jurisdiction exercised by a court of chancery is not granted by statute; it is assumed by itself. * * * In all cases in which a court of equity takes jurisdiction, it will exercise that jurisdiction upon its own principles."
If, therefore, there was an agreement between the complainants and the defendants, such as is alleged in the bill, and which is a ground for relief in equity, then the prosecution of these suits should be restrained and complainants be given an opportunity to prove that agreement in this court; but an analysis of the facts should be enough to convince anyone that the complainants have not presented a case for equitable relief. While it is true that the complainants received nothing for the notes which they entrusted to the defaulting cashier, nevertheless, the defendant bank is a bona fide holder for value.. It was not a party to any fraud of the defaulting bank cashier. He negotiated the notes in a manner not apt to excite any suspicion on the part of the defendant bank. Therefore, at the time of the *Page 509 
conference referred to, the defendant bank had a clear legal right to enforce payment of the notes against the complainants. In a legal sense the complainants did then owe the bank the amount for these notes and thus is presented a different situation than that referred to by Vice-Chancellor Pitney inO'Brien v. Paterson Brewing Co., supra, when he asked: "Shall the payee who has procured from the maker a promissory note for a sum of money which the maker does not owe him, upon a pledge that he shall not be called upon to pay it, be permitted, in equity, to recover upon the note at law?" Here, the complainants had by their negligence made it possible for the defaulting cashier to fraudulently obtain money from the defendant bank. If they lose, it is no fault of the bank but is the result of their own carelessness. As between the bank and the complainants, therefore, the equities up to the point of the conference are with the bank.
But the agreement which complainants allege was made on behalf of the bank at this conference is not, in my judgment, binding on the bank either at law or in equity. The case of Beers v.Broad and Market National Bank, supra, so far as the legal situation presented is concerned, is on all fours with the instant case. There the president of the bank had agreed with the endorser of a note that he should not be held personally liable but that a third party for whose accommodation the original note was endorsed, would be looked to for payment. After default by the maker, the endorser substituted his own note which was subsequently dishonored and charged to his account by the bank. He then brought suit at law against the bank for the money which the bank applied to the payment of the note and sought to prove by parol evidence the agreement between him and the president. This was not permitted, and it was held further that even though such a contract was admitted to have been made it was not binding on the bank as it was an illegal compact, entirely outside the scope of the authority of the president. That, in effect, there was an agreement for a misappropriation of the bank's funds, and if enforced would *Page 510 
have resulted in a fraud on the bank. The contract, therefore, being illegal, the plaintiff could take no benefit from it. So, here, if such a contract as is alleged in the bill of complaint existed, it must be held to be an illegal compact entered into by the cashier outside the scope of his authority The decision in the Beers Case applies with peculiar force here, because to grant to complainants the relief prayed would be to carry into effect an illegal compact and thus constitute this court an instrument of fraud instead of one to prevent fraud. There is no allegation in the bill or accompanying affidavits that the cashier of the defendant bank had been authorized by the board of directors to enter into the contract alleged. On the contrary, the proof submitted by the defendants to the effect that no such contract was authorized is overwhelming and controlling. Nor have the complainants altered their positions materially or given up anything on the faith of the alleged agreement.
To hold these notes, which are the subject of the suits at law, subject to attack in the manner here attempted would render the security of innumerable notes held by banks of this state precarious to say the least, as whenever suit was brought at law, makers or endorsers of notes sued upon could always fly to a court of equity alleging a parol agreement that the note was to be paid by another and thus delay a recovery, the right to which was fixed and determined.
The brewery cases above referred to are easily distinguishable from the instant case. There the notes were held to be in the nature of a penalty to be used in the event that the makers thereof did not use the payee's beer. Those notes were incidental and collateral to other agreements concerning other subject-matter. Here, the notes themselves constituted the original subject-matter between the complainants and the bank. I will advise a decree in accordance with these conclusions. *Page 511