FR. WINKLER KG

v.

Gene STOLLER,

v.

Helmut WINKLER, Martha Winkler Fuhst, Kurt Maier, Walter Schnee, and Franz Remensberger.

**Appeal of Gene STOLLER.**

**Nos. 87–5283, 87–5410 and 87–5459.**

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1988.

Decided Feb. 24, 1988.

Paul S. Hollander (argued), Peter A. Pizzani, Jr., Okin, Pressler, Cohen & Hollander, Fort Lee, N.J., for appellant.

Robert E. Bartkus, Convent Station, N.J., for Fr. Winkler KG.

Before SEITZ, HUTCHINSON, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The principal issue in this diversity action requires us to determine the effect of the parol evidence rule on plaintiff-appellee Fr. Winkler KG's ("Winkler") attempt to recover on two promissory notes guaranteed by defendant-appellant Gene Stoller. By order dated February 24, 1987, the United States District Court for the District of New Jersey granted plaintiff's motion for summary judgment on the notes, and permitted defendant leave to file a counterclaim. Thereafter, the court denied Stoller's motion for reconsideration and dismissed his counterclaim. The defendant appeals and we affirm.

### I.

In 1968, Winkler, a West German manufacturer of bakery equipment, entered into an exclusive North American dealership agreement with Bakers Equipment Winkler, Inc. ("BEW"), a New York corporation engaged in the sale and service of bakery machinery. The agreement extended for a fifteen year period unless either party gave notice of termination one year prior to the termination date. In 1973, Stoller became BEW's chief executive officer.

As consideration for the bakery equipment that it purchased, BEW executed a series of promissory notes payable to Winkler, who, in turn, discounted them with its lender, Deutche Bank. In May 1980, Winkler began requiring Stoller's personal guarantee on all subsequent promissory notes. The plaintiff explained that Deutche Bank would no longer discount BEW's notes without Stoller's guarantee. In compliance with Winkler's request, Stoller guaranteed seven notes on September 2, 1980.

On August 4, 1982, Stoller guaranteed two additional notes on BEW's behalf in consideration for the purchase of equipment. These notes, which form the basis of this appeal, had an aggregate value of $671,485.88. On the front of each note, Stoller signed his name followed by the designation "chief executive officer" to indicate his representative capacity. However, on the back of each note, Stoller signed only his name with no additional designation. The words "per aval Gene Stoller" were printed under each signature. Stoller admits to executing the notes in this fashion.[1]

By letter dated August 5, 1982, Winkler informed BEW of its intention to terminate the dealership agreement. On September 17, 1982, BEW filed a voluntary petition for reorganization pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. Winkler, an unsecured creditor, filed a motion to compel BEW to either assume or reject the dealership agreement pursuant to 11 U.S.C. § 365(d)(2). BEW's assumption of the agreement would require it to satisfy its existing obligations to Winkler, and its rejection of the agreement would effectively excuse Winkler from future performance. Moreover, Winkler asserted that BEW was in default under the agreement based upon its failure to pay for approximately $696,716.40 in equipment purchases. BEW, in turn, asserted that it was entitled to credit for payments made by Burton Koffman[2] in partial satisfaction of its indebtedness.

In response to Winkler's § 365(d)(2) motion, the parties executed a settlement agreement on July 15, 1983. In addition to providing for a consensual termination of the dealership agreement, the settlement required Winkler to provide BEW with new equipment and spare parts over a five year

---

1. By August 1982, BEW was in precarious financial condition. Helmut Winkler, one of Winkler's general partners, asserted that the plaintiff would never have advanced BEW the equipment without Stoller's guarantee.

2. Burton Koffman, a business associate of Stoller, had previously guaranteed several promissory notes.

period, and an accounting of Koffman's payments. Although the settlement extinguished a claim by either party for wrongful termination of the agreement, it reserved the rights of both parties to pursue claims arising prior to the agreement's cancellation. In a letter addendum dated August 29, 1983, BEW expressly reserved its claims against Winkler and other third parties for conduct relating to the dealership agreement. The bankruptcy court approved the settlement on September 6, 1983.

On September 14, 1983, BEW filed a complaint against Winkler and Robert V. Loeb,[3] alleging wrongful interference and breach of contract. Winkler responded by filing objections to BEW's proposed reorganization plan. In a release executed on April 4, 1984, Winkler agreed to withdraw its objections to the reorganization plan in exchange for BEW's release of all claims asserted in the September 14 complaint.[4] The release, executed by Stoller, expressly reserved BEW's right to pursue any future claims against Winkler arising out of the settlement agreement.

On September 24, 1986, Winkler filed a complaint against Stoller seeking to recover on defendant's guarantee of the 1982 promissory notes. In response, the defendant moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction and improper venue.[5] The plaintiff then filed a cross-motion for summary judgment. On February 24, 1987, the district court granted Winkler's summary judgment motion holding, pursuant to *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986), that Stoller's affidavit, submitted in opposition to plaintiff's motion, was insufficient to permit "a rational trier of fact to find for the non-moving party...." The district court additionally granted defendant leave to file a counterclaim.

On March 16, 1987, defendant filed a motion for reconsideration of the district court's order granting summary judgment. The court denied defendant's motion holding: (1) that neither the settlement nor the release effectuated an extinguishment of Stoller's liability on the notes; (2) that Stoller had no right to assert BEW's affirmative claims as a set-off; and (3) that as guarantor of the notes, Stoller was not entitled to notice of dishonor and protest within the meaning of N.J.S.A. 12A:3–502.[6] Finally, on June 22, 1987, the district court dismissed defendant's counterclaim relying upon the doctrine of res judicata. This appeal followed.

## II.

### A.

Initially, Stoller contends that his affidavit, submitted in opposition to Winkler's motion, created an issue of material fact sufficient to preclude the district court's entry of summary judgment against him. Defendant averred that his decision to indorse the notes was based solely upon several representations made to him by Helmut Winkler, Martha Winkler Fuhst, and several other Winkler employees in August of 1982. Specifically, Stoller averred that the plaintiff's employees informed him that his personal guarantee was required by Deutche Bank as a precondition for dis-

---

**3.** Loeb was a former employee of BEW.

**4.** The release did, however, reserve BEW's claim for damages against Loeb.

**5.** On February 2, 1987, a United States Magistrate directed Winkler to file an amended complaint asserting a proper basis for venue pursuant to 28 U.S.C. § 1391. Stoller was served with the amended complaint on February 17, 1987.

**6.** Neither the parties nor the district court dispute the application of New Jersey law to the present action. Under New Jersey conflicts rules, "the law of the state which has the most significant relationship with the occurrence or

transaction of the parties will control as to the substantive matters." *Royal Store Fixture Co. v. New Jersey Butter Co.,* 114 N.J.Super. 263, 276 A.2d 153, 155 (1971). In the instant case, Stoller is a California resident, and Winkler, a German corporation. However, BEW, the maker of the notes, has its principal place of business in New Jersey. Additionally, the notes were executed in payment for bakery equipment delivered to BEW in New Jersey. Finally, one of the notes was issued at Edison, New Jersey, and was payable at a United Jersey Bank. The district court applied New Jersey law, as do we.

counting additional notes. Moreover, defendant asserted that he was told that his guarantee was "a mere formality" and that he would never be held personally liable on it. Stoller contends that these misrepresentations constituted fraud. Defendant's affidavit was contradicted by his own deposition in which he testified that the relevant conversations occurred in 1980, and not in 1982, by Helmut Winkler's affidavit, and by all the relevant written correspondence between the parties from 1980 to 1982.

The district court rejected Stoller's affidavit finding it both unpersuasive and uncorroborated. Relying principally upon *Colby v. Klune*, 178 F.2d 872, 874–75 (2d Cir.1949), defendant argues that he was entitled to have his assertions accepted as true, and correspondingly, that the district court improperly resolved an issue of credibility on a motion for summary judgment. Because we conclude that the parol evidence rule precludes proof of the allegations contained in Stoller's affidavit, we need not address his claim that the district court misapplied the summary judgment standard.[7]

Perhaps no legal precept has inspired more commentary and more confusion than the proscription commonly known as the parol evidence rule. Nearly one hundred years ago, Professor Thayer observed that, "Few things are darker than this, or fuller of subtle difficulties." [8] Simply stated, the rule is that absent "fraud, accident, or mistake ... oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify, or supersede the written contract is inadmissible in evidence." *Bardwell v. Willis Company*, 375 Pa. 503, 506, 100 A.2d 102, 104 (1953). Despite its title, the rule is one of substantive contract law, and not one of evidence. 3 *Corbin on Contracts* § 573 at 375 (1960).

Before a court can apply the parol evidence rule, it must determine whether the parties have adopted a writing as the final and complete expression of their agreement. 4 *Williston on Contracts* § 631 at 960 (*quoting Shivers v. Liberty Building–Loan Association*, 16 Cal.2d 296, 106 P.2d 4 (1940)). In essence, a court cannot conclude that parol evidence, whether oral or written, contradicts the terms of a written agreement without first deciphering the meaning of those terms. *See Atlantic Northern Airlines Inc. v. Schwimmer*, 12 N.J. 293, 96 A.2d 652, 656 (1953). Therefore, oral testimony of facts relevant to the interpretation of a contract is not excluded by the rule. 96 A.2d at 656. Moreover, as between parties, parol evidence challenging the existence or the absence of consideration is always admissible. *See 3 Corbin on Contracts* § 586 at 489. *See also Reconstruction Finance Corporation v. Gohl*, 19 N.J.Misc. 545, 21 A.2d 693, 696 (Sup.Ct.Atl.Cnty.1941).

It is well established that New Jersey law prohibits parol evidence of a collateral agreement not to enforce a promissory note against a maker or an indorser. *Beers v. Broad & Market Nat. Bank of Newark*, 102 N.J.L. 5, 131 A. 105 (Sup.Ct. 1925) (proof of collateral oral contract that unconditional indorser was not to be held liable if maker did not pay note held inadmissible). *See also Reconstruction Finance Corporation v. Gohl, supra.* In *Giberson v. First National Bank of Spring Lake*, 100 N.J.Eq. 502, 136 A. 323 (Ch.1927), the New Jersey Court of Chancery excluded parol evidence of a contemporaneous oral agreement that the payee of a note agreed to look to a third party for payment, and not to the maker. *Id.* 136 A. at 324.

In *Giberson*, the makers of three promissory notes sought to restrain the defendant, First National Bank of Spring Lake, from instituting suit against them. The

---

7. Similarly, we need not reach Stoller's claim that the district court abused its discretion in denying his motion to undertake additional discovery pursuant to Fed.R.Civ.P. 56(f). We observe that the parol evidence rule would similarly preclude defendant's attempt to substantiate his allegations by deposing additional Winkler employees.

8. Thayer, *Treatise on Evidence of the Common Law* 390 (1898).

complainants, Giberson and VanCleaf, executed several blank renewal notes and delivered them to a bank cashier who ultimately discounted them at First National. When the cashier defaulted, the bank looked to the complainants for recovery. Giberson and VanCleaf refused to pay, and alleged that the bank promised not to look to them, but instead to the defaulting cashier's brother. The complainants concluded that the non-enforcement agreement precluded the bank's nascent suit. *Id.* The court disagreed. It observed that in an action at law the parol evidence rule precludes the admission of a contemporaneous oral agreement that varies or alters the terms of a written instrument.. *Id.* The court went on to conclude that the alleged oral agreement was equally inadmissible in a suit at equity. *Id.* at 325–26.

Similarly, in *Reconstruction Finance Corporation v. Gohl, supra,* 21 A.2d at 693, the court held that the parol evidence rule precluded the co-maker of a renewal note from alleging that the plaintiff bank requested his signature as a matter of form and that he would never be held liable for payment. *Id.* at 694–96. Noting that the rule applies equally to negotiable instruments, the court observed:

> To admit parol proof of a contemporaneous oral agreement that so contradicts a lawful, valid written contract as to render the latter absolutely impotent, would amount to a circumvention of the beneficial object of the parol evidence rule. To hold that parties made two contracts at the same time, one of which is in positive contradiction of the other is somewhat fantastic.

*Id.* at 696. Other courts have similarly relied upon the parol evidence rule to exclude evidence of promises not to enforce. *See Third Nat. Bank & Trust Co. of Scranton v. Rodgers,* 330 Pa. 523, 198 A. 320 (1938) (maker who admitted delivery of renewal note could not deny liability on the ground that president of payee bank promised that he would not be called upon to pay); *Samales v. Essie,* 94 N.H. 262, 51 A.2d 639 (1947) (evidence of understanding that notes would never be enforced and would become effective only upon death of

maker held to violate parol evidence rule); *Snowden v. The Franklin National Bank of Long Island,* 338 F.2d 995 (5th Cir.1964) (maker's claim that he would never be held personally liable on note because of bank's assurance that corporate recipient of funds had adequate collateral held to violate parol evidence rule under Texas law); 4 *Williston on Contracts* § 644 at 1123–24 (parol agreement that negotiable instrument need not be paid or sued upon violates parol evidence rule).

Implicit in the foregoing rendition of applicable precedent is the conclusion that reliance upon a promise not to enforce a note does not constitute fraud. In *First Nat. Bank of Hooversville v. Sagerson,* 283 Pa. 406, 129 A. 333 (1925), the Pennsylvania Supreme Court concluded that a defendant's reliance upon a bank's representation that his execution of a note "was a mere matter of form" and would not be enforced against him did not constitute fraud. *Id.* 129 A. at 334–35. The court therefore held that the defendant could not escape the strictures of the parol evidence rule by alleging a promise not to enforce the notes. *Id.* at 335.

■ Turning to the facts before us, we hold that proof in support of a guarantor's allegation that his indorsement was required only as a matter of form, and that it would never be enforced, is prohibited by the parol evidence rule. The notes are unconditional and indorsed without qualification. They embody the final written expression of the parties' agreement, and Stoller's affidavit therefore constitutes an attempt to contradict, alter, or modify the terms of an integrated contract. *See Bardwell,* 100 A.2d at 104. In fact, Stoller's affidavit would do more than simply modify the notes' terms; it would utterly extinguish them. Notably, Stoller has not asserted failure of consideration, mistake, or accident—allegations that are indeed provable by parol evidence. Finally, the defendant's assertion that Winkler's representations constituted fraud is utterly meritless. *See Sagerson,* 129 A. at 335.

In further support of his contention, Stoller relies upon *Westmont Nat. Bank v. Payne*, 108 N.J.L. 133, 156 A. 652 (E & A 1931), and upon *Chera v. The Shores*, 145 N.J.Super. 19, 366 A.2d 994 (1976). In *Westmont*, the New Jersey Court of Errors and Appeals held that the parol evidence rule did not preclude defendants from demonstrating that their signatures on a note were procured by fraud. 156 A. at 654–55. Kirkbride, the cashier of the Westmont National Bank, obtained defendants' signature on two blank sheets of paper by assuring them that "no harm would come" to either themselves or their home. The defendants claimed that they did not even know that they were signing a note. *Westmont*, therefore, involved fraud in the very execution of an instrument. In this case, however, Stoller knowingly executed two notes but alleged that they were not to be enforced against him. We conclude that *Westmont* is distinguishable from the instant action based upon Stoller's inability to establish fraud. The defendant's reliance on *Chera*, however, is somewhat more problematic.

Relying upon N.J.S.A. 12A:3–306(c), the New Jersey Superior Court in *Chera* held that the parol evidence rule did not prohibit proof that delivery of a promissory note to a plaintiff was conditional, or for a special purpose only. 366 A.2d at 995. In opposition to plaintiff's summary judgment motion, the defendant, Michael Sandomino, submitted an affidavit averring that he executed the note at issue to guarantee his continued active participation in a partnership. *Id.* In return for his participation, the plaintiff, Morris Chera, promised to cancel the note. *Id.* at 995. Sandomino additionally averred that although he had fully performed in accordance with his agreement, Chera refused to cancel the note.

Again, we believe that *Chera* is distinguishable from the facts before us. Initially, Stoller has not alleged, in accordance with N.J.S.A. 12A:3–306(c), that his delivery of the notes to Winkler was conditional or for a special purpose. Moreover, Stoller endorsed the notes in consideration for equipment that BEW received from Wink-

ler. Similarly, Sandomino claimed to have executed the notes with the understanding that once his obligation to participate in the partnership was satisfied, the notes would be cancelled. Chera, however, refused to cancel the note, even though the defendant claimed that the consideration for the note had been discharged. Under such circumstances, the Supreme Court of New Jersey held that New Jersey's parol evidence rule did not bar proof of the collateral agreement or the conditional delivery of the note. In the instant case, Winkler indeed supplied BEW with equipment and, unlike Sandomino, who claimed that he fulfilled the consideration for the note, Stoller acknowledged that he did not pay the notes as guarantor in accordance with his promise. For these reasons, we believe that *Chera* is inapposite.

Finally, we observe that our holding supports the integrity and stability of commercial transactions. The negotiability of commercial paper in the marketplace would be severely impaired if an indorser or guarantor of a note could avoid liability simply by attempting to show that his unqualified written promise to pay was not to be enforced. Our conclusion that the parol evidence rule prohibits consideration of Stoller's affidavit is similarly dispositive of the district court's decision to dismiss his counterclaim. In alleging that Winkler's representations regarding the enforceability of the notes constituted fraud, Stoller's counterclaim amounted to nothing more than a restatement of his summary judgment defense. Because we conclude that Winkler's representations, even if accepted as true, were interdicted by New Jersey's parol evidence rule, we affirm the district court's order dismissing his counterclaim.

### B.

Stoller next asserts several challenges to the district court's denial of his motion for reconsideration. Initially, defendant argues that Winkler effectively released BEW from liability under the notes through the 1983 settlement and the 1984 release. Relying upon Restatement of Security § 122 (1941), Stoller concludes that a

creditor's release of a principal effectuates a discharge of the surety. Defendant's contention has no merit.

As a result of the 1983 settlement, BEW and Winkler agreed to terminate the dealership agreement. Moreover, Winkler consented to provide BEW with spare parts and equipment over a five year period. BEW, however, reserved its right to assert claims arising prior to the termination of the dealership agreement. These claims were ultimately asserted and subsequently released in exchange for Winkler's promise to withdraw its objections to BEW's pending reorganization plan. Nowhere in either the settlement or in the release did Winkler agree to discharge, alter, or modify either BEW's or Stoller's obligations under the notes. Ironically, it was *BEW* that in fact released *Winkler* from claims arising under the dealership agreement. Finally, we observe that BEW's discharge from its obligations under the notes by operation of the Bankruptcy Code does not affect a release of Stoller as guarantor. 11 U.S.C. § 542(e). *See also United States v. Kurtz*, 525 F.Supp. 734, 742 (E.D.Pa.), *aff'd*, 688 F.2d 827 (3d Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982).

Stoller additionally contends that the district court erred in refusing to permit him to assert BEW's affirmative claims against Winkler to off-set his liability. The defendant relies principally upon Restatement of Security § 133(c) which provides:

> The surety cannot set off against the creditor the principal's claims against the creditor unless:
>
> (a) the principal has assigned his claim to or consented to its use by surety; or
>
> (b) the principal is made a party to the action by the creditor; or
>
> (c) the principal is insolvent.

Stoller concludes that his right to a set-off

is compelled by BEW's insolvency. We disagree.

The claims that the defendant seeks to assert were extinguished by the settlement and release. Once again, the release, executed by Stoller himself, compromised all of BEW's claims arising out of the dealership agreement for conduct prior to the effective date of termination. We therefore agree with the district court's conclusion that Stoller cannot assert BEW's claims against Winkler simply because BEW itself could no longer assert them.

Stoller finally observes that N.J.S. A. 12A:3–502 requires notice of dishonor and protest as a precondition for indorser liability. Section 12A:3–502 provides in relevant part: [9]

> (1) Where without excuse any necessary presentment or notice of dishonor is delayed beyond the time when it is due:
>
> (a) any indorser is discharged

Defendant concludes that Winkler's failure to comply with the statutory requisites precludes its recovery on the note. We disagree.

N.J.S.A. § 12A:3–416 asserts, in part, that a guarantor of a note waives his entitlement to notice of dishonor and protest:

> **Contract of Guarantor.**
>
> (1) "Payment guaranteed" or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party.
>
> * * *
>
> (5) When words of guaranty are used presentment, notice of dishonor and protest are not necessary to charge the user.

New Jersey law therefore identifies two types of signatories distinguishable by the extent of their respective responsibilities under a written instrument. *See Central Jersey Bank and Trust Company v. Lady Van Industries, Inc.*, 154 N.J.Super. 459,

---

**9.** Stoller additionally relies on N.J.S.A. § 12A:3–413 which asserts:

**Contract of Indorser; Order of Liability.**

(1) Unless the indorsement otherwise specifies (as by such words as "without recourse") every indorser engages that upon dishonor

and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so.

462–63, 381 A.2d 831, 833 (1977). We must therefore determine whether Stoller's "per aval" execution of the notes at issue constituted an indorsement entitling him to notice of dishonor and protest, or a guarantee excusing Winkler from the requirements of N.J.S.A. 12A:3–502. Importantly, Stoller signed each note twice, once in his representative capacity as BEW's chief executive officer, and once with the per aval designation.[10]

In *Banco Nacional De Costa Rica v. Bremar Holdings Corp.*, 492 F.Supp. 364, 366 n. 1 (S.D.N.Y.1980), the district court defined the term "por aval" as:

> [A] customary term used in Latin America to denote an unconditional guarantee under which the "avalor" is obliged to pay the debt obligation as if it were the primary debtor, without the need of prior demand on the maker.

*See also Bar–Ram Irrig. Products v. Phenix–Girard Bank*, 779 F.2d 1501, 1504 (11th Cir.1986) (por aval signatures personally obligated signatory under Ala.Code Section 7-3-403(2)(a) (1975)). Similarly, Black's Law Dictionary 123 (5th ed. 1979) defines "aval" as "the guaranty of a bill of exchange." [11] Because we agree with the district court's conclusion that Stoller's per aval execution constituted a personal guarantee within the meaning of N.J.S.A. § 12A:3–416, the plaintiff was not required to issue notice of dishonor and protest.[12] The district court therefore correctly denied defendant's motion for reconsideration.

Accordingly, the judgment of the district court will be affirmed. Costs taxed against appellant Stoller.

---

**10.** One of the notes was executed per *avel* while the other was executed per *aval*. The distinction is irrelevant.

**11.** The Oxford English Dictionary similarly defines the term as "an endorsement on a commercial document guaranteeing payment of it."

**12.** We additionally agree with the district court that the doctrine of equitable estoppel does not preclude Winkler from pursuing recovery on the notes.