**FIRST TEXAS SERVICE CORPORA-TION, Plaintiff and Counterclaim Defendant,**

v.

**Jay C. ROULIER, Defendant.**

**Civ. A. No. 86–K–5.**

United States District Court, D. Colorado.

Nov. 13, 1990.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This is a lender liability case between a Texas lender and the guarantor of a loan to a Colorado corporation engaged in real estate development. The lender, the First Texas Service Corporation (First Texas), commenced this action against Jay C. Roulier, the guarantor, for judgment on Roulier's guaranty of a loan by First Texas to the Terrace Place Corporation (Terrace Place). Roulier filed an answer alleging several affirmative defenses. He also filed eight counterclaims. The counterclaims generally coincided with Roulier's affirmative defenses, both of which were premised on lender liability theories. First Texas responded by bringing two motions: one for summary judgment on all of Roulier's affirmative defenses and counterclaims and one for partial summary judgment on the breach of contract counterclaim only. I grant the motion for summary judgment in its entirety. The motion for partial summary judgment is denied as moot.

### I. *Facts.*

Roulier was the president and sole shareholder of Terrace Place, a Colorado corporation formed to develop a Denver Tech Center office building known as Terrace Place at Castlewood. In February 1984, Roulier submitted to First Texas an application for construction financing of two projects, one of which was the Terrace Place project.[1] Shortly thereafter, First Texas approved Roulier's loan application, and Roulier indicated his acceptance of the terms of the loan on March 26, 1984.

On June 29, 1984, Terrace Place executed a promissory note payable to First Texas in the principal amount of $13,325,000. The note was secured by a Deed of Trust, Assignment of Rents, Security Agreement

Bruce A. Featherstone, Todd L. Vriesman, Mark E. Gebauer, Kirkland & Ellis, Denver, Colo., for plaintiff and counterclaim defendant.

Kristine A. Hoeltgen, Englewood, Colo., for defendant.

1. The other project was the Tower Two project, another office building located in the Denver Tech Center. In a separate loan, First Texas financed the construction of a third building, known as the Greenville Project, a 15–story office building in Dallas, Texas, in which Roulier also had an interest.

Throughout these proceedings, Roulier has attempted to inject claims relating to the Tower Two and Greenville projects. At a hearing on September 23, 1987, and in her written order of August 12, 1988, Judge Weinshienk ruled that allegations relating to the Tower Two and Greenville projects constituted permissive counterclaims and were not to be pled. To the extent Roulier again attempts to connect claims relating to these two projects to this lawsuit, I have disregarded his allegations.

and Financing Statement, and the terms of the loan were governed by a Loan Agreement. In addition, Terrace Place executed a contingent interest agreement in which it granted to First Texas a conditional interest in the profits generated by the Terrace Place project.

To induce First Texas to make the loan, Roulier personally guaranteed the obligations of Terrace Place to First Texas. The guaranty provided that Roulier unconditionally guaranteed payment of the loan. It also included broad language in which Roulier waived all his defenses against First Texas on the guaranty except payment of the underlying debt. For example, paragraph 8 of the guaranty states, in pertinent part, that

> Guarantors [2] specifically agree that Guarantors shall not have any recourse or action against Holder by reason of any action Holder may take or omit to take in connection with the Obligations, the collection of any sums or amounts herein mentioned or in connection with any security or any other guaranty at any time existing therefor.

In paragraph 9, Roulier agreed that his liability under the guaranty would not be released by First Texas' "failure, refusal, or omission ... to enforce or observe any [provision of the loan documents]. ..." Finally, in paragraph 15 Roulier waived "all defenses given to sureties or Guarantors at law or in equity other than actual payment of the indebtedness."

Construction of the Terrace Place project commenced in the summer of 1984. The following year, when the building was nearing completion, relations between First Texas, Terrace Place and Roulier began to sour. In a letter dated June 12, 1985, First Texas informed Terrace Place that it had not received change orders or otherwise approved the construction of certain street improvements, a retention pond and storm drainage work. First Texas declined to fund the street improvements, concluding that they would not benefit the project.

On July 9, 1985, First Texas again notified Terrace Place that it was in default under the Loan Agreement because two mechanics' liens had been filed against the Terrace Place property. Loan Agreement section 4.2 required Terrace Place to construct the building and maintain the property free from mechanics liens. Terrace Place's investigation of the liens revealed that they were erroneously filed and actually covered work performed on other properties. Subsequently, Terrace Place took action to have the liens removed.

On July 26, 1989, First Texas declared a default of the loan because a lawsuit had been filed against Roulier and other parties. Under section 6.15 of the Loan Agreement, Terrace Place could be held in default if an action that could substantially impair Terrace Place or Roulier was filed against either party. (The claims against Roulier subsequently were settled and the lawsuit was dismissed on May 15, 1986.) First Texas also informed Terrace Place that it was in breach of section 4.4 of the Loan Agreement for not obtaining the lender's approval of all change orders, but it did not specify which change orders had not been approved.

On August 30, 1985, First Texas notified Terrace Place that its interest reserve account, consisting of land profits held back by First Texas, was depleted and that Terrace Place's next interest payment was due on September 1, 1985. Terrace Place failed to make this payment. By letter dated September 9, 1985, First Texas declared a default under section 6.11 of the Loan Agreement and demanded payment in full. Terrace Place alleged that First Texas' failure to apply funds from the reserve account deviated from its previous course of dealing. At the time that this default was declared, First Texas had funded approximately $11,400,000 of the loan.

In October 1985, First Texas initiated foreclosure proceedings against Terrace Place. At the Rule 120 hearing held on December 11, 1985, the Colorado state

---

**2.** Although the guaranty refers to "Guarantors" in the plural, Roulier appears to be the sole guarantor of the loan.

court found that the loan was in default and ordered the sale of the Terrace Place project. Terrace Place filed for bankruptcy on December 18, 1985, one day before the foreclosure sale was to occur, and the foreclosure was stayed. First Texas then moved for relief from the stay under § 362(d) of the Bankruptcy Code, and Terrace Place moved for valuation of First Texas' secured claim against it under § 506(d) of the Code. In its order of March 26, 1986, the bankruptcy court agreed to lift the stay to permit the foreclosure to go forward. In addition, it valued First Texas' secured claim against Terrace Place at $7,500,000. First Texas bid this amount at the foreclosure sale on April 2, 1986, and a certificate of sale was issued to it. When no party redeemed before expiration of the statutory period, First Texas obtained title to the Terrace Place property.

On January 2, 1986, First Texas commenced this action to recover from Roulier, as guarantor of the note, the approximate $4,000,000 deficiency on the Terrace Place loan. Roulier answered, asserting numerous affirmative defenses. On June 30, 1986, Roulier filed eight counterclaims, naming the First Texas Savings Association (FTSA), a subsidiary of First Texas, as an additional defendant.[3] Terrace Place and two other Roulier-owned entities were joined as cross-claimants against First Texas and FTSA. On October 9, 1987, the court granted First Texas' motion to dismiss Terrace Place and the other third-party claimants from the action.

Before Terrace Place was dismissed as a cross-claimant, the trustee for the corporation's bankruptcy estate filed a motion in the bankruptcy court for the sale of assets under § 363 of the Bankruptcy Code. The trustee sought the bankruptcy court's approval to sell by public auction all of Terrace Place's potential claims and causes of action against First Texas that were asserted in this lawsuit. The bankruptcy court granted the trustee's motion over Roulier's

objection. At the sale held on January 14, 1987, First Texas was the sole bidder at $1,000. Roulier moved to have the sale set aside, and the bankruptcy court granted his motion. First Texas appealed, and by order dated November 10, 1987, the district court overturned the order setting aside the sale. *See* First Texas Reply Brief, Ex. B. First Texas thereby obtained any claims that Terrace Place could have asserted against it in this lawsuit.

Roulier amended his counterclaims on November 2, 1987. He asserted the following eight counterclaims: (1) breach of fiduciary duty, (2) breach of contract based on the implied duty of good faith and fair dealing, (3) outrageous conduct, (4) conspiracy, (5) intentional interference with prospective contractual relations, (6) intentional interference with existing contractual relations, (7) breach of contract under the Terrace Place loan agreement and (8) breach of contract under the Greenville loan agreement. First Texas answered Roulier's counterclaims and subsequently moved to dismiss them. In its order dated August 12, 1988, the court struck the second, third and eighth counterclaims and all allegations relating to the Tower Two project and the Greenville project, which the court found to be permissive counterclaims.

First Texas now moves for summary judgment on each of the remaining counterclaims. First Texas contends: (1) Roulier's claim for breach of fiduciary duty should be dismissed because First Texas did not owe or breach a fiduciary duty to Terrace Place, (2) Roulier's civil conspiracy claim fails as a matter of law because First Texas could not conspire with its subsidiary, FTSA, (3) Roulier's claims for interference with existing and prospective contractual relations should be dismissed because Roulier was not a party to any of the alleged contracts and First Texas engaged in no improper conduct, and (4) Roulier's

---

**3.** After Roulier filed his counterclaims, the Federal Savings and Loan Insurance Corporation (FSLIC) was appointed receiver for FTSA. FSLIC then moved for substitution as a counterclaim defendant and for dismissal of the claims

against it on the grounds of mootness, since FTSA had no assets. Roulier did not object to motions, and both were granted in Judge Babcock's order of September 14, 1989.

claims for breach of contract fail because of limitations in the guaranty and because First Texas breached no contracts. First Texas has also moved separately for partial summary judgment on Roulier's breach of contract counterclaim. It contends that Roulier is precluded from claiming that First Texas obtained the Terrace Place project at the foreclosure sale for less than its fair market value because the bankruptcy court conclusively determined fair market value in the relief from stay hearing.

Before I can consider whether Roulier has alleged sufficient facts to state a claim under the above lender liability theories, I must first address Roulier's standing as a guarantor to assert claims belonging to Terrace Place. I must also address whether he waived his right to bring these claims in the guaranty agreement. Finally, I must consider the effect of the sale of Terrace Place's claims against First Texas by the bankruptcy trustee. The parties address these issues tangentially, and only in connection with the intentional interference and breach of contract claims, even though they are dispositive. Because these issues are central to this motion, I have addressed them below.

## II. *Summary Judgment.*

### A. Standards for Summary Judgment.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Thus, summary judgment will be granted against a party "who fails to ... establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). For the court to find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In making this decision, the trial judge must construe the evidence and draw all inferences in the light most favorable to the nonmoving party. *Id.* at 587, 106 S.Ct. at 1356. The court "is not to weigh the evidence to determine the truth of the matter, but instead must ask 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Dreiling v. Peugeot Motors of Am., Inc.,* 850 F.2d 1373, 1377 (10th Cir.1988) (citing *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512). The failure to make the required showing as to one issue of material fact "renders all other facts immaterial and summary judgment in favor of the moving party is required." *Palermo v. First Nat'l Bank & Trust Co.,* 894 F.2d 363, 367 (10th Cir.1990).

### B. Roulier's Standing as Guarantor to Assert Breach of Contract and Tort Claims of Terrace Place.

█ The threshold issue in this case is whether Roulier can assert claims belonging to Terrace Place as defenses to First Texas' guaranty action against him. Reviewing Roulier's counterclaims in the light most favorable to him, Roulier has alleged no defense arising directly from a breach of the guaranty agreement itself; his claims center on First Texas' allegedly wrongful conduct toward Terrace Place. At best, Roulier contends that First Texas' actions led to the foreclosure of the Terrace Place project, thereby increasing his liability as guarantor. Thus, Roulier's defenses depend on his ability to establish that First Texas acted improperly toward Terrace Place. First Texas argues that, as a guarantor, Roulier cannot assert the claims of Terrace Place in defense of First Texas' action on the guaranty.

As a general rule, when a creditor sues a guarantor and does not name the principal debtor in the action, the guarantor is not entitled to raise defensively the claims of the principal debtor against the creditor. *See Rhode Island Hosp. Trust Nat'l Bank*

*v. Ohio Casualty Ins. Co.,* 789 F.2d 74, 78 n. 4 (1st Cir.1986); *National Sur. Co. v. George E. Breece Lumber Co.,* 60 F.2d 847, 851 (10th Cir.1932);. L. Simpson, *Suretyship,* § 70 at 319 (1950). The rationale behind this rule is to protect the claims of the principal, since the guarantor may not be in the best position to assert them. *See Schenley Affiliated Brands Corp. v. Mar-Salle, Inc.,* 703 F.Supp. 744, 746 (N.D.Ill. 1989); *Continental Group, Inc. v. Justice,* 536 F.Supp. 658, 661 (D.Del.1982).

As Roulier correctly notes, however, there are three exceptions to this general rule. "A guarantor may assert the independent claim of the principal ... where (1) the surety has taken an assignment of the claim or the principal has consented to the surety's use of the claim, (2) both principal and surety are joined as defendants, or (3) the principal is insolvent." *Continental Group, Inc.,* 536 F.Supp. at 661; *see also* Restatement of Security § 133(2) (1941). The guarantor's right to assert the principal's claims under these exceptions is in the nature of setoff against the creditor's claim on the guaranty; the guarantor may not recover affirmatively. *See Continental Group, Inc.,* 536 F.Supp. at 662. Thus, if the guarantor's recovery on his counterclaims exceeds his liability under the guaranty, the guarantor may not recover this excess. *Id.*

First Texas' arguments on this score ignore the above exceptions to the general rule. Under the third exception, Roulier is clearly entitled to assert as a setoff Terrace Place's claims against First Texas in this guaranty action because there is no dispute that Terrace Place, the principal debtor, is insolvent. In addition, Roulier could theoretically assert TPC's claims under the first exception, based on a consent theory. Several courts have held that the principal's consent to the guarantor's assertion of claims will be presumed when the guarantor controls the principal. *See Bloor v. Shapiro,* 32 B.R. 993, 1001 (S.D.N.Y.1983) (and cases cited therein). Here, as in *Bloor,* Roulier is the sole shareholder of Terrace Place. Accordingly, because Terrace Place is insolvent and could be construed to have consented to Roulier's assertion of its claims, Roulier's status as guarantor would not preclude him from asserting defensively Terrace Place's claims.

C. Waiver of Defenses.

■ First Texas further argues, however, that Roulier's defenses to the enforcement of the guaranty are expressly limited by the language of the guaranty contract itself. As noted above, in addition to waivers of specific defenses in paragraphs 8 and 9 of the guaranty, the guaranty contains in paragraph 15 a waiver of all defenses except payment of the underlying debt. Although neither party discusses this issue, the breadth of these waivers brings into question their enforceability. Moreover, under Colorado law, while ordinary principles on contract construction are applied to guaranty contracts, a guarantor is "favored in the law," *National State Bank of Boulder v. Burns,* 525 P.2d 504, 506 (Colo.App.1974), and the guaranty contract is strictly construed. *See A.R.A. Mfg. Co. v. Cohen,* 654 P.2d 857, 859 (Colo.App. 1982).

Despite the principles of contract construction favoring guarantors, broad waivers of rights or defenses under a guaranty agreement have been upheld by many courts. *See Aetna Life Ins. Co. v. Anderson,* 848 F.2d 104, 107 n. 10 (8th Cir.1988) (citing cases). In the *Aetna Life* case, the court enforced the guarantor's waiver of "all defenses, offsets, and counterclaims which the Guarantors may at any time have to any claim of the Lender against the Borrower," precluding him from contending that the property the lender received through foreclosure satisfied the principal debtor's debt. *Aetna,* 848 F.2d at 106-07. With the exception of *Aetna,* however, few courts have addressed waiver provisions as broad as those contained in the guaranty at issue here. Most have dealt with waivers of more common defenses, such as release of the principal, notice of default, application of collateral, or modification of the underlying loan obligation. *See, e.g., United States v. Little Joe Trawlers, Inc.,* 776 F.2d 1249 (5th Cir. 1985) (waiver of right to notice of lender's

intent to accelerate); *United States v. Beardslee*, 562 F.2d 1016, 1022–24 (6th Cir. 1977) (waiver of defense of release of principal debtor), *cert. denied*, 439 U.S. 833, 99 S.Ct. 113, 58 L.Ed.2d 128 (1978).

Although broad waivers of rights under a guaranty have been upheld, other courts have ruled that certain defenses cannot be waived as a matter of public policy. For example, in *B.A. Mortgage & Int'l Realty Corp. v. American Nat'l Bank & Trust Co. of Chicago*, 706 F.Supp. 1364 (N.D.Ill. 1989), a mortgagee brought an action to foreclose certain property and enforce a guaranty by the beneficial owners of the property. The guaranty in that case provided that the beneficial owners waived all defenses except prior payment and satisfaction of the debt. *Id.* at 1376. The court in *B.A. Mortgage* held that the beneficial owners expressly waived all defenses and that "[t]hey must live by that agreement." *Id.* The court went on, however, to carve an exception to its ruling, finding that the beneficial owners could not waive the defense of breach of the implied duty of good faith and fair dealing:

> It must be recognized that the implied covenant of good faith reflects a strong public policy judgment: Parties with unfettered contractual discretion cannot be allowed to exercise that discretion in bad faith. And the essence of a sufficiently strong public policy is that it overrides contractual provisions—or more accurately, that the public policy will cause courts to deny enforcement of contractual terms to the opposite effect. Absent a showing to the contrary, this Court will place the implied covenant in question into that category.

*Id.* at 1376–77; *see also Morris v. Columbia Nat'l Bank of Chicago*, 79 B.R. 777, 785 (N.D.Ill.1987) (holding that guarantor cannot waive implied covenant of good faith and fair dealing); Sherman, *Article 9 and Other Non–Bankruptcy Remedies*, PLI Order No. A4–4231 (Practicing Law Institute 1988) (questioning enforceability of waiver of implied duty of good faith and fair dealing); L. Preble, *Legal Opinions in California Real Estate Transactions*, 42 Bus.Law. 1139, 1178–79 (1987) (same).

■ Although Colorado courts have often denied enforcement of contractual terms that violate public policy, *see, e.g., Cooley v. Big Horn Harvestore Sys. Inc.*, 767 P.2d 740 (Colo.App.1988) (parties cannot contract away potential liability for their own negligence), there is no Colorado authority addressing whether the implied duty of good faith and fair dealing can be waived. Even assuming that Colorado courts would follow *B.A. Mortgage* and find such a waiver to be against public policy and unenforceable, there is a further obstacle to Roulier's assertion of this and other counterclaims. In *Fr. Winkler KG v. Stoller*, 839 F.2d 1002 (3d Cir.1988), the guarantor of a debt of a bankrupt corporation sought to assert the corporation's claims against the lender by way of setoff to the lender's lawsuit on the guaranty. During the corporation's bankruptcy proceedings, however, the corporation and the lender reached a settlement. The corporation released its claims against the lender in exchange for the lender's consent to the corporation's reorganization plan. The Third Circuit held that, due to the corporation's settlement of its claims against the lender, the guarantor could not set off the claims in the guaranty action because they were no longer viable. *Id.* at 1008.

The rationale of *Fr. Winkler* is applicable here. Although Terrace Place did not agree to a settlement of its claims against First Texas, the trustee for the corporation's bankruptcy estate sold to First Texas at public auction "all of the debtor's claims and causes of action, Civil Action No. 86–Z–5, filed in this court, wherein claims are asserted against First Texas Service Corporation." *See* First Texas Reply Brief, Ex. B (Order reversing bankruptcy court's order setting aside sale). That sale was upheld on appeal to the district court. *Id.* Among the claims sold was Terrace Place's cross-claim for breach of the duty of good faith and fair dealing. *See* Counterclaims and Cross–Complaints, filed June 30, 1986 (indicating Terrace Place's claims against First Texas pending at the time of sale). Since Terrace Place no longer has any viable claims against First Texas, Roulier may

not assert as a set-off claims derivative of Terrace Place, including one for breach of the implied duty of good faith and fair dealing. Therefore, summary judgment in favor of First Texas on all claims is granted.

D. Motion for Partial Summary Judgment on Fair Market Value of Terrace Place Property.

Since I hold that First Texas prevails on its motion for summary judgment as to all of Roulier's counterclaims, Roulier's seventh counterclaim for breach of contract will be dismissed. First Texas' motion for partial summary judgment on the issue of fair market value of the Terrace Place property is denied as moot.

E. Conclusion.

First Texas' motion for summary judgment is granted because it has demonstrated that, as a matter of law, it should prevail in this action. While it appears at first blush that Roulier has standing as a guarantor to assert defensively the claims of Terrace Place, undisputed evidence demonstrates that Roulier waived all of his defenses against First Texas except payment of the underlying debt, not relevant here. Even assuming that under Colorado law this waiver was ineffective as to Roulier's claim for breach of the implied duty of good faith and fair dealing, Roulier's case against First Texas still fails. It is undisputed that Terrace Place's claims were sold to First Texas by the trustee in bankruptcy, therefore the corporation no longer has viable claims against First Texas. Under the *Fr. Winkler* case, because Terrace Place's claims against First Texas are not viable, neither are Roulier's. Accordingly, the motion for summary judgment is granted. The motion for partial summary judgment, no longer material to this case, is denied as moot.