FOSTER F. BIRCH

*v.*

WILLIAM H. BAKER et al.

[Decided May 9th, 1913.]

1. Upon a bill filed to reform a written contract made between complainant and five of the defendants as parties of the first part, on the one hand, and the other defendant Mirabeau Sims, on behalf of the Sims-Kent Company, a corporation then in·process of organization, as party of the second part, on the other, the issues related (1) to the existence of an alleged oral agreement between complainant and the other parties of the first part to the contract, for the payment by the latter to complainant of a portion of the value of the land conveyed by him to the company, and whether this can be proved by parol evidence, and (2) to the further understanding or agreement that this agreement as to compensation was intended by all parties to the contract to be inserted in the written contract actually signed. Upon examination of the evidence—*Held*, that the complainant had failed on the proofs to support either of these issues and that his bill must ·be dismissed.

2. As to the character of proofs required, courts of equity are as much bound by the provisions of the statute of frauds in this respect as courts of law, and are not at liberty to disregard them. In determining what contracts come within its scope, courts of equity and law follow the same rules, and in these matters of construction of the statute equity follows law.

3. The decision of *Birch* v. *Baker,* 79 *N. J. Law* (*50 Vr.*) *9,* followed as a binding authority controlling this case as to the application of the statute to the agreement for payment now in question, and grounds for equitable relief, notwithstanding the statute, must appear.

4. As respects the *second* issue—the alleged omission of the agreement from the written contract by mistake, which is the equitable ground of relief relied on for protection against the statute—*Held*, that the evidence shows that the agreement in its present form was the agreement intended to be signed by the complainant as well as by the other parties of the first part and the defendant Sims, and that if there was any misapprehension or mistake on the part of the complainant in reference to the agreement with the other parties as to the compensation for his lands, it was not a mistake as to the promise for payment being either intended to be or actually being in the agreement at the time it was signed.

5. The mistake which is equitable ground for reformation of a written contract must be clearly shown to have been a mutual mistake, and the mistake must be established by such force of proof as leaves no rational doubt of the fact of mistake.

6. Upon the question of reformation of a written contract for mutual mistake, due weight must always be given to the sworn statement of defendants as to their intentions in reference to the form of the contract. The reason is, that otherwise, under the form of reformation or correction, a new contract may be in fact made by the court. And where the entire preliminaries to the signed contract are oral and there is no writing of any kind to appeal to for the purpose of correction, the court must require proofs that will be sufficient to overcome the effect of the defendants' oaths.

Heard on bill, answer, replication and proofs.

Mr. *Elmer King,* for the complainant (*Messrs. Vreeland, King. Wilson & Lindabury,* solicitors).

Mr. *Benjamin W. Ellicott* and Mr. *Willard W. Cutler,* for the defendants.

EMERY, V. C.

Complainant's bill is filed to reform a written contract made between complainant and five of the defendants as parties of the first part, on the one hand, and the other defendant Mirabeau Sims on behalf of the Sims-Kent Company, a corporation then in process of organization, as party of the second part, on the other.

At the time of the execution of the contract, complainant was the owner of a tract of land in the town of Dover, and previous to the execution of the contract, negotiations had taken place be-

tween Sims on the one hand and complainant and the five other defendants, or some of them, on the other, for the erection and operating on this land of complainant of a manufacturing plant by Sims or a company he was forming. As the result of these negotiations an understanding was reached that this tract of land owned by the complainant was to be conveyed to the company without payment of any consideration on its part, and that upon its erection of the plant according to plans proposed and commencing operations, a sum not exceeding $10,000 should be advanced to the company on first mortgage. It was also agreed that another strip of land ten feet in width and belonging to William H. Baker, one of the defendants, should also be conveyed to the company without payment on its part. In the course of the negotiations, which resulted in the written contract, a price or valuation of $2,500 had been fixed for the complainant's land, and a valuation of $100 for the strip of land of defendant William H. Baker. These values, however, were not fixed with Sims, but between complainant and the other defendants, or some of them.

Complainant and all of the other defendants, except William H. Baker, met Sims at complainant's office on the 13th day of February, 1906, for the purpose of preparing a written contract. A draft or memorandum of the contract was first made by Sims himself and then a lawyer, Mr. Ellicott, was sent for to put the contract in form. The form of the contract was dictated in the presence of all the parties (except William H. Baker), copies were prepared and handed to all the parties present, and the contract was either read by each one or read aloud, and afterwards executed by all except William H. Baker, in Mr. Ellicott's presence and as the subscribing witness. On the following day Mr. William H. Baker also signed the contract in Mr. Ellicott's presence. This written contract was in form, only one between complainant and the five defendants other than Sims, as parties of the first part, on the one hand, and Sims, on behalf of the Sims-Kent Company, as a corporation then in process of organization, on the other, as sole party of the second part. It was provided that in consideration of Sims or the company erecting and equipping buildings for operation upon a lot in Dover, therein described

(being in fact the complainant's lot), and equipping, occupying and operating these buildings and premises as a steel casting plant as per plans agreed on, and also of a deposit of $2,000 as a guarantee to carry out the undertaking—then the parties of the first part (including complainant, Foster F. Birch, who owned the land, and the five defendants who had no title thereto) agreed "to secure and convey to said company in fee-simple the title of said lands and premises from the said Foster F. Birch," and the parties of the first part also agreed that they, upon the completion of the buildings and the commencement of operations therein, would loan and advance to the company the amount it desired not exceeding $10,000, to be secured by a first mortgage on the lands, and also that they would secure an additional strip of land ten feet in width belonging to William H. Baker, extending from East Blackwell street, in Dover, back to the lands of Birch, to be conveyed to the company. This strip of land, in connection with twenty feet adjoining, which belonged to Birch, was for a right of way to the steel plant to be erected. Provision was also made that upon the completion of the buildings the sum deposited as a guarantee might be withdrawn by the company.

By this contract no provision was made for any payment by the company for the conveyance to it of the lands either of Birch or Baker, nor was such payment by the company contemplated as part of the contract to be entered into by the company. The complainant's present claim by his bill is, that it was a part of the entire contract between himself and the other defendants except Sims; that it was agreed between them all that the value of his land to be conveyed to the company was to be fixed at $2,500; that the complainant himself should make a contribution toward its value of the sum of $500, and that the remaining $2,000 should be paid to him by the other five parties of the first part, each of these five persons agreeing to pay complainant $400.

The bill seeks to rectify or reform the contract with Sims by having this agreement between him and the other five parties of the first part, as to the payment to him for his land, inserted as part of the contract, and the bill charges that it was the intention of all the parties to the contract that this agreement between them should be incorporated in the written contract, and that

complainant erroneously believing it to be incorporated, conveyed his lands to the company without receiving any money compensation therefor. The company on its part took possession of the land, erected the buildings and performed its part of the contract. One of the defendants, William F. Birch, a son of complainant, has paid $440 as his share of the $2,000 and interest thereon, but none of the other parties of the first part have paid. Decree *pro confesso* has been taken against Sims, and all of the other defendants, except William F. Birch (who has not answered), deny in their answer any agreement on their part, or on the part of any of them, that they should be each liable for the sum of $400, or any other sum, and also deny that any such agreement was to form part of the contract in question, and insist that the contract was drawn and signed in the form intended.

The issues between the parties relate—*first,* to the existence of the alleged oral agreement between complainant and the other parties of the first part to the contract, for the payment by the latter to complainant of a portion of the value of the land conveyed by him to the company, and whether this can be proved by parol evidence, and *second,* to the further understanding or agreement that this agreement as to compensation was intended by all parties to the contract to be inserted in the written contract actually signed.

Without going into the details of the evidence my conclusion is, that complainant has failed on the proofs to support either of these issues and that his bill must be dismissed. As to the character of proofs required, courts of equity are as much bound by the provisions of the statute of frauds in this respect as courts of law, and are not at liberty to disregard them. *Brewer* v. *Wilson,* *17 N. J. Eq. (2 C. E. Gr.) 180, 184; 1 Story Eq. Jur. 753; 29 Am. & Eng. Encycl. L. (2d ed.) 845.* In determining what contracts come within its scope, courts of equity and law follow the same rules (*3 Pom. Eq. Jur.* § *1293*), and in these matters of construction of the statute equity follows the law. *1 Pom. Eq. Jur.* § *426.* The decision of the supreme court in *Birch* v. *Baker (1909), 79 N. J. Law (50 Vr.) 9,* upon the application of the statute, is therefore a binding authority controlling this case as to the application of the statute to the agreement for payment

now in question, and grounds for equitable relief, notwithstanding the statute, must appear. Had the complainant's lands been conveyed to the defendants alleged to have promised to contribute to their payment, the statute would not have been applicable, because the action for unpaid purchase-money would then be based upon the debt which arose upon the conveyance. *Murray* v. *Schuldt, 73 N. J. Law (44 Vr.) 489.*

On the *second* issue, the alleged omission of the agreement from the written contract by mistake, which is the equitable ground of relief relied on for protection against the statute, I conclude on the proofs that the evidence shows that the agreement in its present form was the agreement intended to be signed by the complainant, as well as by the other parties of the first part and the defendant, Sims, and that if there was any misapprehension or mistake on the part of the complainant in reference to the agreement with the other parties as to the compensation for his lands, it was not a mistake as to the promise for payment being either intended to be or actually being in the agreement at the time it was signed. The mistake which is equitable ground for reformation of a written contract must be clearly shown to have been a mutual mistake, and the mistake must be established by such force of proof as leaves no rational doubt of the fact of mistake. *Green* v. *Stone (Court of Errors and Appeals, 1896), 54 N. J. Eq. (9 Dick.) 387, 399, 400.* The evidence offered by complainant upon this issue of mistake falls far short of this requirement. Complainant's own evidence on this point is indefinite and unsatisfactory, and the account given by his son, William F. Birch, called on his behalf, of the conversation in reference to the payment for the land at the time the agreement was drawn and signed, justifies the inference that for payment by any of the defendants the complainant relied expressly on the word or implied consent of the defendants then present, and not on the insertion in the agreement of any provisions for payment of the land. Mr. William Birch says that to the persons around the desk in his office, when the contract was brought in by Mr. Ellicott for signing, he asked if it was all right and in proper form, and on his reply that it was, his father then said, "Gen-

tlemen, understand that you are to pay an equal share of this $2,000," and they said "Yes," and Mr. Pierson, one of the defendants, said, "Whether we sign this or not, Mr. Birch, our word is as good as our bond," to which complainant replied, "I always considered it so." The contract, according to this witness, was then signed by all of the defendants except William H. Baker, who was not present and who signed it on the following day, without any interview with complainant. Mr. Ellicott denies that the conversation referring to the payment for the land took place at that time, but says that at the earlier meeting of the parties, which took place in the office in the morning, and while getting directions for drawing the formal contract, he said to the parties present that the paper did not make any provision for the payment for the property, and inquired whether they wanted anything put in the contract showing the amount to be paid and by whom. To this inquiry, as Mr. Ellicott says, the complainant replied, "We will arrange for that other ways," and that they said nothing was wanted in the contract showing how the property was to be paid for, but *it* was simply an agreement to satisfy Sims or his company. He does not state which one of the parties made this remark. It appears also that at the time the contract was signed each of the parties had a typewritten copy to look over while Mr. Ellicott read the contract, and each of the defendants, William H. Baker, Thomas Baker and George Pierson, signing the contract as one of the parties of the first part, swears substantially that the contract as signed was the contract he intended to sign, and that he did not at the time of signing the contract intend that any agreement as to his payment of $400, or any other part of the purchase price of the land, should be inserted. Andrew K. Baker, one of the defendants, was not sworn, but he has answered denying the agreement alleged. Upon the question of reformation of written contract for mutual mistake, due weight must always be given to the sworn statement of defendants as to their intentions in reference to the form of the contract. The reason is, that otherwise, under the form of reformation or correction, a new contract may be in fact made by the court. And where the entire preliminaries to the signed

contract are oral and there is no writing of any kind to appeal
to for the purpose of correction, the court must require proofs
that will be sufficient to overcome the effect of the defendants'
oaths.

The substantial claim of the defendants now resisting pay-
ment to the complainant, is that the money to be paid to com-
plainant for his lands was to be raised by or through the agency
of the Dover Improvement Company and by subscription from
the defendants, or some of them, and other citizens and per-
sons interested in the establishment of the manufactory in the
town.    They claim that their participation in the contract in
question was solely for the purpose of joining with complainant
in protecting the Sims company in undertaking the establish-
ment of its factory, and that the matter of their payment or
contribution toward payment for complainant's land to be con-
veyed by him to the Sims company, was not and was not in-
tended by any of the parties to be included in the agreement.
My conclusion on the proofs is that the contract was executed
in the form agreed on and intended.

A dismissal of the bill will be advised.