WILLIAM F. JAMES, PLAINTIFF-RESPONDENT, v. FED-
ERAL INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued March 13, 1950—Reargued on the Court's Own Motion May
22, 1950—Decided June 5, 1950.

*Mr. Richard J. Congleton* argued the cause for the appellant (*Messrs. Young, Shanley, Foehl & Fisher,* attorneys).

*Mr. Maurice Bernstein* argued the cause for the respondent (*Messrs. Slingland, Houman & Bernstein,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J. This is an appeal from a judgment of the Law Division of the Superior Court entered on a jury

verdict in favor of the plaintiff in the amount of $4,470. The case was certified by this Court on its own motion while it was pending in the Appellate Division of the Superior Court.

The facts in the case are not in dispute. The plaintiff took off in his Stinson Voyager aircraft from the Lincoln Park Airport, Morris County, with three friends as passengers to view a forest fire in the nearby Ramapo Mountains. The plane started to climb and got to an altitude of about 400 feet, when the motor, though still running, failed to develop sufficient power for flight. Seeing the terrain ahead was unfavorable for a landing, the plaintiff put his plane into a dive to get up speed so he could glide back to the airport. He was unable to make the airport, however, and the plane landed in a peat bog, first striking a mound of dirt, breaking off a wheel, and then skidding along on its belly for 30 or 35 feet. The propeller chewed itself off on the ground and the plane came to a stop with the tail about ten feet off the ground and the nose and underneath side of the engine cowling just about resting on the ground. The peat bog where the plane came to rest was smouldering, and within a matter of a minute or two, or perhaps even of seconds, gasoline dripping from the carburetor overflow was ignited by the fire on the ground and the plane was quickly enveloped in flames. Firemen responding to a call put in by someone at the airport were unable to extinguish the blaze until the plane had been totally destroyed. Three of the occupants of the plane were slightly injured, the fourth suffered a serious back injury, but all got out of the plane before it caught fire.

The plaintiff instituted this action on a policy of insurance, then in effect, whereby the defendant insured the plaintiff in respect to his aircraft against "all risks of physical loss or damage to the aircraft, except while in flight, subject to the declarations, general conditions and other terms of the policy included herein or endorsed hereon, excluding fire or explosion resulting from crash or collision while in flight." "Flight" was defined in the policy as being "the period from the start of actual take-off run, while in the air and until completion of the landing run."

At the conclusion of the plaintiff's case, the defendant made a motion for judgment in its favor, which was denied by the court. The defendant then offered no testimony, but rested its case and renewed its motion for judgment, which was likewise denied. The court thereupon submitted the case to the jury, charging in part that "in order for the plaintiff to recover he must prove by a preponderance of evidence that the loss or damage to his plane was not caused by fire or explosion resulting from crash or collision while in flight. He must prove that the proximate cause of the damage was from fire after the completion of the landing run, excluding fire or explosion resulting from crash or collision." The jury found for the plaintiff and the judgment here appealed from was entered accordingly.

Two questions are presented on the appeal. The defendant first contends that it was error to have submitted the case to the jury as the facts were not in dispute and the construction of the policy was a matter of law to be determined by the court, and second, that as a matter of law the fire that destroyed the plane resulted from a crash or collision while in flight, and that, therefore, the loss was excluded from the coverage of the policy.

The first point need not be decided here, since the plaintiff in his brief in effect admits that the case should not have gone to the jury. He contends, however, that the defendant was not prejudiced by the error, because the court itself should have entered judgment for the plaintiff.

The case, therefore, revolves around the question of whether or not the loss is compensable under the terms of the policy. Whatever may be the rules of construction when a policy of insurance is ambiguous, it has long been the law in this State that when the contract is clear the court is bound to enforce the contract as it finds it. " 'The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce the contract as it is written.' " *Kupfersmith v. Delaware Insurance Company,* 84 *N. J. L.* 271, 275

(*E. & A.* 1912); *Caruso v. John Hancock Mutual Life Ins. Co.*, 136 *N. J. L.* 597, 598 (*E. & A.* 1947). Applying this test to the instant case, was the fire in question within the terms of the policy? Clearly it was not by reason of the two exclusionary clauses hereinbefore quoted.

First, the policy excluded from its coverage all risks while the aircraft was "in flight," and "flight," as we have already seen, was defined to include the "completion of the landing run." How can the plaintiff's airplane reasonably be said to have completed its landing run, when it came down in a peat bog never intended for airplane landings and where there obviously was no landing run?

Secondly, the policy excluded damage from "fire or explosion resulting from crash or collision while in flight." Manifestly the plaintiff's landing was not what he wished it to be, *i. e.,* at the airport with a landing run. Obviously there was a crash or, phrased differently, a collision with the land at a spot not planned for airplane landings. The plaintiff argues that the plane did not crash, because "had it not been for a mound in the landing field the landing would have been a normal one since the plaintiff had the plane, so far as maneuverability was concerned, under control." It is difficult to see how a peat bog with mounds in it can be considered a landing field or how it can be said that the plaintiff had the plane under control in view of the fact that its single motor was not functioning properly and the plane was falling. The plane here "crashed" within the common meaning of that word as used with respect to aircraft. The word "crash" is defined in *Webster's New International Dictionary (2nd Ed.)* as meaning in aeronautics "to bring [an airplane] down in such a way that in falling or landing the craft is damaged." The plane here did not land on an airfield or other suitable place and the landing was not of the plaintiff's choice but one of necessity, resulting in hitting a mound, breaking a wheel, skidding along on its belly, ending with its tail up and nose down, its propeller chewed off, and its occupants injured. It is impossible to construe this otherwise than a "crash or collision while in flight" within the meaning of the policy, and

it would appear futile to argue that the parties in executing the contract would have intended it to be considered otherwise.

■■ Did the fire result from this crash? Clearly it would seem that it did. To be sure, the plane might not have caught fire, or at least the testimony so indicated, had it not been for the fire in the peat bog. It would be unreasonable, however, to say that recovery under the policy was intended to depend upon the conditions existing in the particular location where the plane crashed. For example, the parties surely could not have intended that the loss would be compensable if the plane crashed into high tension power lines and the resulting short circuit of those lines set the plane on fire, whereas if it crashed on an airfield and the ignition of the plane itself was short circuited and caused a fire, it would not be compensable. That planes often catch fire upon crashing, either because of conditions existing in the place where the crash occurs or because of conditions existing in the plane itself, is common knowledge, and the obvious intent of the second exclusionary clause in this contract was to make the resulting loss non-compensable in either event. To be compensable the loss must be proximately caused by a peril insured against. In matters of this kind observed Judge Cardozo in *Bird v. St. Paul Fire and Marine Ins. Co.*, 224 *N. Y.* 47, 120 *N. E.* 86 (*N. Y. Ct. of App.* 1918):

"General definitions of a proximate cause give little aid. Our guide is the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract. It is his intention, expressed or fairly to be inferred, that counts. There are times when the law permits us to go * * * back in tracing events to causes. The inquiry for us is how far the parties to this contract intended * * * to go. The causes within their contemplation are the only causes that concern us."

In the instant case it suffices to exclude liability if the crash or collision exposed the airplane to the risk of fire resulting in its loss or damage, whether the fire was produced by the physical forces released by the crashing of the plane or by some independent and external agency, such as a bog fire. The hazards of air travel were not risks contemplated by the policy. If it had not been for engine trouble, the plaintiff

would not have been forced to land in a place unsuitable for a landing run with the resulting crash or collision which exposed the aircraft to damage by fire. The fire or heat latent in the bog which ignited the gasoline spilled by the airplane was only a concurrent or contributing factor to the plaintiff's loss; the predominant or proximate cause of the plane's destruction was the crash or collision occurring before the completion of a landing run. The loss therefore was not a risk assumed by the defendant.

Accordingly, the defendant is relieved from liability in the situation by the operation of each of the exclusionary clauses which we have here examined. But the plaintiff in his answering brief makes a further argument in an effort to establish liability. He asserts that an "insurer, in order to escape liability, must prove that the fire was produced by crash or collision while in flight" and that "the plaintiff could have rested after establishing a *prima facie* case of liability by showing the burning of the aircraft, but the plaintiff did more." All of this may be readily agreed to as a statement of general principles, but it does not help the plaintiff here, because of the very fact that he "did more." He made it unnecessary for the defendant to offer proof, because by his own proof he brought his case within the exclusionary clauses of the policy, thereby in effect proving the defendant's case. The court is not free to ignore this proof merely because it came from the mouth of witnesses called by the plaintiff rather than from those produced by the defendant. Rather, on the defendant's motion for judgment the court must consider as true all the evidence introduced by the plaintiff, draw all reasonable inferences therefrom which are favorable to the plaintiff and apply the law thereto. When this is done, judgment for the defendant is indicated.

The judgment below is reversed and judgment will be entered in this Court for the defendant, *Rule* 1:4–9(b).

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT and ACKERSON—4.

*For affirmance*—Justices HEHER and BURLING—2.