935 A.2d 808 (2007)
396 N.J. Super. 553
Nicholas IMPINK, a minor by his parent and natural guardian, Shannon BALDI and Shannon Baldi, individually, Plaintiffs-Respondents,
v.
David REYNES, Neil B. Reynes and Maria A. Reynes, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 17, 2007.
Decided November 29, 2007.
*810 Edward L. Thornton, Edison, argued the cause for appellant (Methfessel & Werbel, attorneys; Mr. Thornton, on the brief).
Kenneth W. Elwood, Chatham, argued the cause for respondent (Blume, Goldfaden, Berkowitz, Donnelly, Fried & Forte, P.C., attorneys; Mr. Elwood, on the brief).
Before Judges PARKER, R.B. COLEMAN and LYONS.
The opinion of the court was delivered by
LYONS, J.A.D.
Defendants David Reynes, Neil B. Reynes, and Maria Reynes appeal from a provision in a judgment which orders their insurance carrier, Franklin Mutual Insurance *811 Company (FMI), to purchase or cause to be purchased an annuity for the sole use and benefit of the infant-plaintiff Nicholas Impink.
The following factual and procedural history is relevant to our consideration of the issues advanced on appeal. In May 2004, the infant-plaintiff was injured when he was accidentally shot in the eye with a paint ball by David Reynes. As a result of the accident, the infant-plaintiff is now legally blind in his right eye. He has developed cataracts and will require laser surgery in the future to remove them and for the implantation of a lens to improve his vision. In May 2005, the infant-plaintiff, by his parent and natural guardian, Shannon Baldi, and Shannon Baldi individually, filed suit asserting nine causes of action against defendants, including negligence, carelessness, recklessness, assault and battery, failure to supervise, and negligent entrustment.
At the time of the accident, defendants' only insurance to cover the loss was a $300,000 homeowners policy issued by FMI. Following the filing of an answer by defendants, discovery commenced. At the conclusion of discovery, the parties entered into settlement negotiations. Plaintiffs were seeking the full $300,000 policy limit and sought to have that sum paid out through a structured settlement. Defendants' insurance carrier was only willing to offer a structured settlement if plaintiffs agreed to accept $250,000. Eventually, the parties agreed to settle the matter for $300,000 "cash."
Plaintiffs then moved for a hearing to approve the settlement pursuant to R. 4:44-3 and moved for an order directing defendants' insurance carrier to pay the net proceeds from the settlement directly into a structured settlement for the benefit of the infant-plaintiff. Defendants opposed the motion. On December 1, 2006, the motion judge heard oral arguments on the application and entered an order directing FMI to purchase an annuity for the infant-plaintiff and to execute the appropriate documentation. The motion judge, when informed of defendants' intent to appeal, required defendants to place the $300,000 settlement with the court pending the outcome of the appeal. This appeal ensued.
On appeal, defendants argue that the court lacked authority to order FMI to participate in a structured settlement when it was not its desire to do so and that the court cannot "craft a better contractual resolution for the plaintiff than originally bargained for." Plaintiffs argue that the court had inherent power to order defendants to purchase an annuity because it is in the best interest of the infant-plaintiff and because defendants would not be prejudiced by such an action because they would receive a release.
The motion judge concluded, in his written statement of reasons, that the court was not changing the terms of the settlement, but rather directing how and to whom the proceeds are to be paid. The court also concluded that it was in the minor's best interest to have the moneys placed into a structured settlement since the total moneys received through a structured settlement would be greater. Thirdly, the court reasoned that the purpose of the "friendly" proceeding was to make sure that the minor's interests were protected and that the court had the inherent power to approve not just the amount of the settlement, but also the manner in which it is to be paid. Lastly, the court noted that FMI should have no further responsibility once the money is paid and, therefore, would suffer no prejudice by this settlement.
*812 At the outset, we note that "[a] settlement between parties to a lawsuit is a contract like any other contract, which may be freely entered into and which a court, absent a demonstration of fraud or other compelling circumstances, should honor and enforce as it does other contracts." Jennings v. Reed, 381 N.J.Super. 217, 227, 885 A.2d 482 (App.Div.2005) (internal quotations and citations omitted). From the record submitted to us, the contract of settlement agreed upon between the parties was that defendants, through their insurance carrier, would pay $300,000 "cash" to plaintiffs to resolve plaintiffs' lawsuit. In Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J.Super. 487, 493, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991), we stated that
where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J.Super. 273, 276, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Id.; Brick Twp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J.Super. 397, 402, 409 A.2d 806 (App. Div.1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950).
[Ibid.]
Furthermore, our Supreme Court has observed that "[i]t is of course not the province of the court to make a new contract or to supply any material stipulations or conditions which contravene the agreements of the parties." Marini v. Ireland, 56 N.J. 130, 143, 265 A.2d 526 (1970).
Therefore, on first review, the motion court's changing the settlement from a lump sum cash payment to a structured settlement would appear to be without authority. The contract was clear and unambiguous and the court was changing a bargained-for term. The motion court claimed, however, that its order requiring that a structure be purchased did not change any term of the agreement, such as the amount of the settlement, but only the person to whom it is to be paid and the manner of payment. We disagree.
It is evident from the record that the parties bargained considerably concerning whether the settlement should be put in a structure. This was an important issue, particularly to defendants' carrier. The parties had agreed on a $300,000 lump sum payment to plaintiffs to settle the matter. The manner of payment and the recipient of the funds were "terms" of the agreement. "The terms of a promise or agreement are those expressed in the language of the parties or implied in fact from other conduct." Restatement (Second) Contracts § 5 comment a (1981). See Id. § 5 ("A term of a promise or agreement is that portion of the intention or assent manifested which relates to a particular matter."). As we have said, "it is not the function of the court to make a better contract for the parties, or to supply terms that have not been agreed upon." Graziano v. Grant, 326 N.J.Super. 328, 342, 741 A.2d 156 (App.Div.1999) (internal citations omitted). It is clear from the record that the terms of the agreement called for the payment to be made in a lump sum, not in a structure. *813 The motion judge impermissibly ordered a change, therefore, to the terms agreed upon.
Plaintiffs argue, however, that the court, in its exercise of its parens patriae jurisdiction, has the inherent power to order the change presented here. Again, we disagree. The doctrine of parens patriae has its roots in equity, Kinsella v. Kinsella, 150 N.J. 276, 318, 696 A.2d 556 (1997), and it is well-established that "equity follows the law," particularly where a statute is involved. Shinn v. Schaal, 394 N.J.Super. 55, 68, 925 A.2d 88 (App.Div. 2007). See Giberson v. First Nat'l Bank, 100 N.J. Eq. 502, 507, 136 A. 323 (Ch.1927) (citing Birch v. Baker, 81 N.J. Eq. 264, 86 A. 932 (Ch.1913)) ("Undoubtedly, equity follows the law more circumspectly in the interpretation and application of statute law than otherwise."). Furthermore, our Supreme Court has held that "a court of equity will follow the legislative and common-law regulations of rights, and also obligations of contract." Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183, 495 A.2d 66 (1985).
With respect to the settlement of matters involving minors, the courts derive their powers initially from R. 4:44-3. That rule directs courts to "determine whether the settlement is fair and reasonable as to its amount and terms." R. 4:44-3. The courts, therefore, are charged with determining whether a proposed settlement presented to it as the agreement of the parties is fair and reasonable to the infant-plaintiff. The court then is to be presented with an agreement for review and approval or rejection. The rule was developed because the law is solicitous of infants. Riemer v. St. Clare's Riverside Med. Ctr., 300 N.J.Super. 101, 110, 691 A.2d 1384 (App.Div.), certif. denied, 152 N.J. 188, 704 A.2d 18 (1997). "That is the reason underlying the legal requirement of judicial approval of an infant settlement by way of a `friendly' hearing." Ibid. The reason for the rule is to assure that an infant's interest be protected and that the settling defendant is afforded some measure of repose. Ibid. The judge's role at such a hearing is to assess "whether the proffered settlement is commensurate with the settling defendant's liability and, if so, whether it adequately compensates the infant for his past, present and future losses attributable to that defendant." Id. at 111, 691 A.2d 1384. The trial court, after assessing these factors, then must make a determination whether the proposed settlement, as advanced by the parties, is fair and reasonable. If the court is not satisfied with the terms of a settlement, it can reject the settlement or make suggestions to the parties regarding its concerns and how they might be addressed. However, if the parties do not consent to such suggestions, the court's parens patriae jurisdiction, as evidenced in the rule, does not authorize it to require one party to the settlement contract to accept a change in the settlement terms without its consent. Allen v. World Inspection Network Int'l, Inc., 389 N.J.Super. 115, 122, 911 A.2d 484 (App.Div.2006) ("A court of equity cannot abrogate a contract based only on the judge's sense that a provision is unfair.").
There is authority for the proposition that the inherent jurisdiction of the court to protect children is more extensive than the grants conferred by statute. See Ivaldi v. Ivaldi, 288 N.J.Super. 575, 588, 672 A.2d 1226 (App.Div.), rev'd on other grounds, 147 N.J. 190, 685 A.2d 1319 (1996). However, that broad grant of inherent power does not, in this instance, permit the court to require a non-consenting party to a contract to accept a different term than the one to which it agreed.
A court's parens patriae powers over a minor's estate is embodied in N.J.S.A. 3B:12-49, which states in pertinent *814 part, "The court has, for the benefit of the ward, . . . all the powers over the ward's estate and affairs which he could exercise, if present and not under a disability. . . ." The court's parens patriae powers are to act for the minor with respect to the minor's estate and affairs. It confers only the powers the minor would have, if he were an adult, over his affairs and not authority to affect the vested, legitimate, and enforceable contract rights of third parties. In this case, the infant-plaintiff, if he were not suffering from the legal disability of infancy, would not be permitted by a court to change the terms of a bargained-for contract. Consequently, neither does the court, standing in his shoes, have the power to draft a better settlement. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 223, 864 A.2d 387 (2005) ("Equitable relief is not available merely because enforcement of the contract causes hardship to one of the parties."); Dunkin' Donuts, supra, 100 N.J. at 183, 495 A.2d 66. One term the parties agreed upon was a "cash" payment to the plaintiffs and not a structure. If the court found that term to be neither fair nor reasonable to the minor, the court's parens patriae prerogative is outlined clearly in R. 4:44-3  it may reject the settlement as not adequately addressing and protecting the minor's interest.
We are mindful "[t]hat the settlement of litigation `ranks high in our public policy.'" Isetts v. Borough of Roseland, 364 N.J.Super. 247, 254, 835 A.2d 330 (App.Div.2003) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990)). However, as we said in Isetts:
It does not mean that courts will rewrite or unduly expand settlement agreements in order to deem settled or waived things not legitimately encompassed. The settlement of lawsuits is favored not because of the salutary consequence of relieving our overtaxed judicial and administrative calendars . . ., but because of the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone. In recognition of this principle, courts will strain to give effect to the terms of a settlement wherever possible. It follows that any action which would have the effect of vitiating the provisions of a particular settlement agreement and the concomitant effect of undermining public confidence in the settlement process in general, should not be countenanced.
[Ibid. (internal quotations omitted).]
The trial judge noted that the structure would not prejudice defendants' insurer. Defendants' insurer did not provide a specific documented example of prejudice to it, but rather a general concern that it may still be liable at some time in the future should the structure fail. It also argued that it was not its desire to enter into a structure in this case without some financial consideration. Defendants' insurance carrier may, within the bounds of good faith, determine what issues are of material importance to it. Presumably, the insurance carrier was concerned that if it were obligated to place each of its cash settlements in structures, it would lose the ability in the future to offer to other plaintiffs structured settlements, but at a reduced settlement amount. In addition, it may have been concerned with additional administrative burdens and the remote possibility of future liability should a structure fail. Those concerns are legitimate and do not appear to indicate bad faith.
We conclude, therefore, that in the context of a "friendly" hearing conducted pursuant to R. 4:44-3, a motion judge's inherent parens patriae powers do not permit a *815 judge to change the terms of the settlement contract submitted to it without the consent of the parties. Because we believe that the motion judge exceeded his R. 4:44-3 authority in ordering the structure, we reverse the judge's order and remand the matter to the trial judge so that he can determine whether, as presented to him, the settlement contract entered into by the parties is fair and reasonable to the infant-plaintiff. If, after he weighs the appropriate factors, he determines it is not, he may reject it and schedule the matter for trial.
Reversed and remanded. We do not retain jurisdiction.