**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0781-16T1

V.M., by his Guardian ad Litem
LaTANYA MURPHY and LaTANYA
MURPHY, Individually,

    Plaintiffs-Respondents,

v.

JERSEY SHORE UNIVERSITY
MEDICAL CENTER formerly known
as Jersey Shore Medical Center,
MERIDIAN HEALTH, CHARLES H. HUX,
M.D., and STEVEN FELD, M.D.,

    Defendants-Respondents,

and

JERSEY SHORE PERINATAL INSTITUTE,
ELIZABETH BROWNELL, M.D., CATHY
CHERON, M.D., JOSEPH C. CANTERINO,
M.D., DONNA BENNETT, M.D., ANNIE
BORDALLO, M.D., DAVID RAMOS, M.D.,
ELIZABETH ASSING, M.D., FAWAZ
KASHLAND, M.D., VIVIEN PACOLD, M.D.,
UNIVERSITY OF MEDICINE & DENTISTY OF
NEW JERSEY — ROBERT WOOD JOHNSON
MEDICAL SCHOOL,

    Defendants,

and

GEORGE E. LAUBACH, M.D.,

Defendant-Appellant.

_____

Argued October 23, 2017 — Decided November 3, 2017

Before Judges Sabatino and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1489-09.

Mark A. Petraske argued the cause for appellant (Buckley Theroux Kline & Petraske, LLC, attorneys; Mr. Petraske, of counsel and on the briefs).

Sharyn Rootenberg argued the cause for respondents V.M. and LaTanya Murphy (Chase Kurshan Herzfeld & Rubin, LLC, attorneys; Michael B. Sena and Ms. Rootenberg, on the briefs).

Joseph A. DiCroce argued the cause for respondent Steven Feld, M.D. (Law Offices of Joseph A. DiCroce, LLC, attorneys; Mr. DiCroce, on the briefs).

PER CURIAM

In this multi-party medical malpractice action, defendant George E. Laubach, M.D., appeals from the trial court's October 7, 2016 order finalizing and approving the terms of a settlement with plaintiff, an incapacitated adult, pursuant to Rule 4:44-3 and Rule 4:48A. Defendant argues that the court erred in imposing in its final order several material terms as to which he or his insurer had not agreed.

For the reasons that follow, we conclude the October 7, 2016 order must be vacated without prejudice, and the matter remanded to the trial court. The record shows there was not an enforceable "meeting of the minds" between the parties as to all material terms when the supposed settlement was serially presented to the court for approval. Moreover, even if we were to conclude that an enforceable mutual agreement existed as to certain features of a settlement, the court strayed from the governing principles of Impink v. Reyes, 396 N.J. Super. 553 (App. Div. 2007), by imposing additional material terms upon defendant and his insurer over objection.

I.

We need not recite at length the protracted, and often convoluted, procedural history of this matter that entailed multiple proceedings spanning over a full year after the jury was discharged mid-trial.

Simply stated, Dr. Laubach and various co-defendants were sued for negligence in connection with the treatment and handling of plaintiff LaTanya Murphy's pregnancy in 1993 and her son plaintiff V.M.'s delivery.[1] Following V.M.'s birth, he has sustained a variety of debilitating conditions to such a degree

---

[1] Ms. Murphy is the mother and guardian ad litem of V.M.

that he has been declared an incapacitated adult.  Plaintiffs asserted that defendants, including Dr. Laubach, deviated from applicable standards of care, causing in full or in part V.M.'s permanent disabilities.  Defendants denied such liability.

A jury trial commenced on August 24, 2015 against several of the named defendants, including Dr. Laubach.  After numerous days of testimony, but before the proofs were complete, Dr. Laubach's attorney and counsel for other defendants presented a joint settlement proposal to plaintiffs on September 24, 2015. Negotiations ensued.

Certain settlement terms were orally placed on the record by counsel on October 7, 2015.  Among other things, counsel stated that Dr. Laubach and co-defendant Dr. Steven Feld would pay $1.25 million in settlement through their insurer in exchange for their dismissal and releases from plaintiffs; co-defendant Dr. Charles H. Hux would be dismissed without contributing to the settlement.[2] Defendant's counsel further stated to the court that it was contemplated that the settlement funds would be placed into a separate Special Needs Trust ("SNT") for V.M.  He noted that the insurer would be issuing only two checks to implement the

---

[2] As a separate item, co-defendant Jersey Shore University Medical Center agreed to pay $150,000 in settlement to plaintiffs.  That settlement apparently had been implemented without dispute, and is not before us as an issue on this appeal.

settlement: one to the trust and a second check to plaintiffs' attorneys for their fees and costs. Plaintiffs' counsel stated on the record that the "mechanism" for the payment and application of the settlement funds was to be determined by the plaintiffs at a future time. Notably, at this settlement hearing plaintiffs' counsel stated on the record to V.M.'s mother "you will decide after we have consultations as to how you want to take the rest of the money, whether in — whether a [SNT] annuity or otherwise[,]" to which she replied "[r]ight." There was no mutual agreement placed on the record that day as to who would administer the SNT, if one were created.

Subsequently, on March 1, 2016, counsel appeared before the court at an initial "friendly hearing" pursuant to Rule 4:44-3 and Rule 4:48A. At that hearing, V.M.'s mother was sworn in as a witness and testified. She expressed a firm desire at that time to have the entire amount of settlement funds remitted to her as V.M.'s guardian. By the end of the hearing, however, after colloquy with the court, V.M.'s mother appeared to convey her willingness to enter into an SNT. The friendly hearing was not concluded that day, in contemplation of resuming it at a later date.

Several months passed. In the meantime, the trial court requested a local attorney, one with expertise in handling the

settlement of cases involving minors and incompetent adults, to provide the court with advice on a settlement disbursement plan for V.M. That attorney, who essentially acted as a consultant to the court, recommended certain elements of an SNT, which he proffered in a subsequent letter. Among other things, the consulting attorney recommended that the SNT be funded through the purchase of an annuity. He also recommended that V.M.'s mother be designated as the sole trustee of the SNT. In addition, he recommended payment up front of a $30,000 portion of the settlement funds to address some of V.M.'s immediate needs for housing and transportation.

Plaintiffs accepted the consulting attorney's ultimate recommendations. However, defendant and his insurer did not fully agree with them, objecting in particular to: (1) being required to purchase an annuity; (2) making a separate up-front payment; and (3) designating V.M.'s mother as sole trustee of the SNT, without there being a co-trustee or some other independent method of oversight of the disbursement of the trust funds.

A second friendly hearing was conducted on September 20, 2016. Again, defendant's counsel voiced disagreement with the proposed settlement terms, particularly the mandated purchase of an annuity, the separate up-front payment, and the appointment of V.M.'s mother as sole trustee of the SNT, without bond.

After considering the parties' positions, the court ruled that the proposed settlement terms recommended by the consulting attorney were in V.M.'s best interests. Consequently, it issued, over defendant's continued objection, a six-page final order on October 7, 2016. Among other things, the order specified that: defendant's insurer would fund the SNT through the purchase of an annuity from another designated insurance company; the insurer would make a $30,000 separate payment directly to the SNT for V.M.'s immediate needs; the insurer would also make a payment to plaintiffs' law firm; and V.M.'s mother would serve as the sole trustee of the SNT, without bond.

Defendant appealed the court's October 7, 2016 order. Defendant has also appealed the trial court's ruling that he or his insurer must pay a yet-to-be-quantified sum[3] in counsel fees to plaintiffs for failing to carry out the settlement terms specified by the court. In the meantime, defendant has deposited the sum of $1.25 million into court, without prejudice to its rights, pending the outcome of the appeal.

---

[3] Although this loose end arguably renders the appeal interlocutory, we choose to exercise jurisdiction nonetheless in the interests of justice and grant leave to appeal.

A-0781-16T1

The legal principles pertinent to this dispute are well established. There is a strong and longstanding public policy that favors the settlement of litigation. Brundage v. Estate of Carambio, 195 N.J. 575, 601 (2008) (citing Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App. Div.), certif. denied, 35 N.J. 61 (1961)). Settlements provide a measure of repose and finality to disputes that would otherwise persist and burden the litigants and our court system if they were not amicably resolved.

A settlement is a type of contract. See Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), certif. denied, 94 N.J. 600 (1983). It is well settled that "[a] contract arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting W. Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)); see also Savarese v. Pyrene Mfg. Co., 9 N.J. 595, 599 (1952).

"Where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable." Weichert Co. Realtors, supra, 128 N.J. at 435; see also Heim v. Shore, 56 N.J. Super. 62, 72 (App. Div. 1959) ("[T]he recipe for the making of a binding contract requires if

not absolute definiteness and certainty on essential terms, at least expressions of assent sufficient to permit reasonable implications to be drawn as to the performance to be rendered.").

Therefore, a settlement is not enforceable until the parties have agreed on all essential terms. Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 126 (App. Div. 2002), certif. denied, 176 N.J. 279 (2003). Releases or other closing "contingencies" are essential terms that must be approved by both parties. Ibid.

These general principles were illuminated by this court in Impink, supra, 396 N.J. Super. at 558, in the specific context of a proposed settlement of a personal injury claim involving a minor plaintiff. The proposed settlement was presented to the trial court for approval under Rule 4:44-3. Id. at 559. Initially, the parties agreed to settle the minor's lawsuit for a specified amount in cash. Id. at 558. However, at the ensuing friendly hearing, the minor's counsel moved to compel the defendants' insurer to remit the settlement proceeds by purchasing an annuity that would function as a structured settlement, payable to the minor or his guardians in future installments. Id. at 559. The defendants objected to this modification, noting that they and their insurer had only agreed to pay the settlement proceeds in cash. Ibid.

The trial court rejected the defendants' objection in Impink, finding that the purchase of an annuity was in the minor

plaintiff's best interests. Ibid. As described in our opinion, the trial court reasoned that it "was not changing the terms of the settlement, but rather directing how and to whom the proceeds [were] to be paid." Ibid.

On appeal in Impink, we reversed the trial court's order and remanded for further proceedings. Id. at 559-65. Although we recognized the public policies favoring the voluntary settlement of civil disputes, we concluded the trial court had exceeded its authority by imposing on the defendants a material term of settlement, i.e., the annuity, as to which they had never agreed. Id. at 560-61. As the late Judge Thomas Lyons cogently explained, the defendants' insurer had a legitimate basis for withholding its assent to the proposed annuity purchase:

> The trial judge noted that the structure would not prejudice defendants' insurer. Defendants' insurer did not provide a specific documented example of prejudice to it, but rather a general concern that it may still be liable at some time in the future should the structure fail. It also argued that it was not its desire to enter into a structure in this case without some financial consideration. Defendants' insurance carrier may, within the bounds of good faith, determine what issues are of material importance to it. Presumably, the insurance carrier was concerned that if it were obligated to place each of its cash settlements in structures, it would lose the ability in the future to offer to other plaintiffs structured settlements, but at a reduced settlement amount. In addition, it

may have been concerned with additional administrative burdens and the remote possibility of future liability should a structure fail. Those concerns are legitimate and do not appear to indicate bad faith.

[Id. at 564 (emphasis added).]

Given the legitimacy of these concerns, and the absence of mutual assent as to this settlement term, we ruled that the trial court had erred in forcing the defendants and their insurance carrier to purchase the annuity. Ibid. We therefore set aside the provision, even though it may well have been in the minor plaintiff's best interests to receive a structured payout rather than receiving a lump sum in cash:

> We conclude, therefore, that in the context of a "friendly" hearing conducted pursuant to [Rule] 4:44-3, a motion judge's inherent parens patriae powers do not permit a judge to change the terms of the settlement contract submitted to it without the consent of the parties. Because we believe that the motion judge exceeded his [Rule] 4:44-3 authority in ordering the structure, we reverse the judge's order and remand the matter to the trial judge so that he can determine whether, as presented to him, the settlement contract entered into by the parties is fair and reasonable to the infant-plaintiff. If, after he weighs the appropriate factors, he determines it is not, he may reject it and schedule the matter for trial.

[Id. at 564-65 (emphasis added).]

Applying these controlling principles of law here, we similarly conclude that the trial court's October 7, 2016 order

11

A-0781-16T1

in this case must be set aside. First, the series of proceedings and associated documents make it eminently clear that there never was a meeting of the minds between the parties as to all material terms of a settlement. To be sure, the dollar amount to be paid by or on behalf of defendants, i.e., $1.25 million, was mutually approved. But the specific methods by which those funds would be allocated and paid were not agreed upon in full.

We recognize that plaintiffs' counsel advised the court, when certain settlement terms were first placed on the record on October 7, 2015, of an expectation that he would thereafter "sit down and discuss" with his client "the appropriate mechanism" to allocate the settlement funds, "whether it's a special needs trust, an annuity or otherwise." Even so, defendants and their insurer did not cede unilateral authority to plaintiffs to determine that "mechanism."

As we held in <u>Impink</u>, the specification of whether a defendant's contribution to a settlement shall be paid in cash as a lump sum, through the purchase of an annuity, or in some combination thereof, may be a material term, and one that cannot be foisted unilaterally upon an non-assenting defendant. Reciprocally, a court may not force an unwilling plaintiff to accede to material payment terms dictated by a defendant or its

A-0781-16T1

insurer. There instead must be a mutual "meeting of the minds." That objective unfortunately was not achieved here.[4]

Even if, for the sake of argument, there was a meeting of the minds as to certain settlement terms, such as the $1.25 million to be paid by defendants in consideration and the reciprocal provision of releases by plaintiffs, the imposition of additional material terms by the court without defendant's assent was inappropriate. Those additional terms include the annuity, the up-front separate payment, and the designation of V.M.'s mother as the sole trustee of the SNT. Although we surely appreciate the trial court's diligent and earnest efforts at several proceedings to help forge a final agreement in V.M.'s best

---

[4] At oral argument on the appeal, we explored with counsel whether the matter should be remanded to the trial court to conduct an evidentiary hearing to ascertain whether the parties had agreed to all material terms of a settlement. See, e.g., Harrington v. Harrington, 281 N.J. Super. 39 (App. Div. 1995) (in which this court remanded a settlement dispute for such an evidentiary hearing). However, plaintiffs' counsel advised us that no such hearing was necessary, and that the transcripts and documents supplied on appeal were sufficient to reflect the existence of a binding agreement as to all material terms. Defense counsel likewise did not urge that we order such an evidentiary hearing, and advocated that the trial court's final order be vacated. Given the steadfast competing positions of the parties, as well as the passage of considerable time since the trial was halted, we doubt that there would be much practical benefit to ordering an evidentiary hearing, the outcome of which might well provoke another appeal by an aggrieved party. In fact, it is patently obvious from the documentary record that no enforceable agreement was ever attained.

interests, the law does not allow the court at a friendly hearing to impose material settlement terms upon the parties, when lacking their mutual assent.

For these many reasons, the October 7, 2016 order is vacated, and the matter is remanded to the trial court for a new trial. In addition, the court's related ruling to impose a counsel fee sanction is likewise vacated, as we detect no bad faith by either side in this thorny dispute.

We genuinely hope that, on remand, the parties will be able to negotiate a final enforceable settlement agreement and obviate the need for a new trial. Accordingly, we suggest that a case management conference be conducted within the next thirty days. In the interim, the funds on deposit shall remain in place, unless and until the trial court otherwise directs. If a final enforceable settlement with all material terms is attained, it shall be reduced to writing and presented to the trial court for review at a renewed friendly hearing. At such a hearing, the court's sole options will be either to approve the negotiated terms, or reject them as not being in V.M.'s best interests. We do not intimate whatsoever any views on the appropriate terms of settlement.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0781-16T1