**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0715-19

EMORY STANKOVITS, by
her Parent and Guardian
STEVEN STANKOVITS,

     Plaintiff-Appellant,

v.

JOSEPH STACK and
CHRISTINE STACK,[1]

     Defendants-Respondents.

_____

CARLEEN STANKOVITS,[2]

     Intervenor-Respondent.

_____

---

[1] Defendants have advised the court they take no position with respect to the appeal and filed a case information statement only to monitor the matter to ensure "the amount of the settlement is not disturbed." They have not filed a brief.

[2] Plaintiff misidentified counsel for Carleen Stankovits as counsel for defendants in his notice of appeal and amended notice of appeal. We granted her motion to intervene and to compel amendment of plaintiff's notice of appeal to accurately reflect the parties and their counsel.

Argued November 18, 2020 – Decided February 23, 2022

Before Judges Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5836-17.

Timothy J. Dey argued the cause for appellant.

Stephanie Palo argued the cause for intervenor-respondent (Buchan & Palo LLC, attorneys; Stephanie Palo, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

Emory Stankovits, then thirteen-years-old, was bitten by a dog while visiting her aunt — her mother's twin sister — at her home in 2017. Emory's parents, her father and guardian ad litem in this action, Steven Stankovits, and her mother, intervenor Carleen Stankovits, had been divorced for some years at that point.[3] Although Carleen and Steven share legal custody of Emory, Carleen was, and remains, Emory's parent of primary residence.

The day after the dog bite, Steven retained a lawyer who wrote to Carleen's matrimonial counsel to advise that Steven proposed to act as Emory's guardian ad litem in a lawsuit to be filed on Emory's behalf. Counsel wrote

---

[3] Because the parties to the appeal share the same last name, we refer to them by their first names, intending no disrespect.

that he understood "there is acrimony between the parties," but assured he would "keep your client advised as to the progress of the case and consult with both parents regarding the matter on an ongoing basis." Steven's counsel emphasized that Steven would not personally benefit from the litigation "as any recovery would be deposited with the Surrogate,"[4] and proposed the parents "work together" for Emory's benefit. Carleen consented to the arrangement and suit was filed five months later.

The case eventually ended in a $275,000 structured settlement, a resolution satisfactory to both Carleen and Steven. Their disagreement was over the form of the structure. Steven sought a structure whereby Emory would receive the entire proceeds shortly after her eighteenth birthday. In the option he favored, Emory would receive two payments, the first of $114,000 when she turned eighteen in December 2022 and the second of $119,550.82 a month later.

Carleen and Emory objected, advocating an alternative structure proposed by the same structure company, Ringler Associates, through purchase of an annuity policy from the same insurance company, Pacific Life,

---

[4] Rule 4:48A(a) requires the proceeds of settlement on behalf of a minor exceeding $5,000 to be deposited in court pursuant to N.J.S.A. 3B:15-16 and 17, "except as otherwise ordered by the court."

A-0715-19

represented by Ringler to be an A+ rated carrier by A.M. Best Rating Service. The alternative they proposed would provide Emory four payments: $25,000 when she turned eighteen; $40,000 when she turned twenty-one; $60,000 when she turned twenty-five; and a final payment of $192,474.37 when Emory turned thirty in December 2034.

At the "friendly hearing" to approve the settlement, see Rule 4:44-3; S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 269 n.7 (2020), Steven and Carleen, both represented by counsel, were sworn and assented to the $275,000 settlement on the record, which would provide Emory a net recovery of $218,311 after costs and counsel fees. The judge acknowledged the dispute between the parents over the form of the structure and asked them to submit briefs to permit him to "make a decision on which structured settlement to approve." Steven did not object.

Carleen relied on the objections set out in letters to the court she submitted with Emory. Carleen claimed her duty and Steven's was to choose a structure to protect Emory's funds for her future needs. Carleen explained that Ringler had presented her and Emory with four alternatives, and they chose the one they urged the court to approve because it "guaranteed the largest long

A-0715-19

term monetary yield" while providing Emory interim distributions at expected milestones.

Carleen claimed Steven insisted on Emory receiving the full amount of the settlement on her turning eighteen, "to allow him control over this large sum of money . . . claiming he can invest it and promise Emory more money in return." Carleen claimed the money "could quickly be lost if mismanaged by [Emory's] father," whereas "[a] long term structured settlement" would "prevent Emory's father or [Carleen] from using Emory's money for [their] own benefit, spending it inappropriately, or mismanaging its investment" and likewise prevent Emory from having control over so large a sum before she was ready to manage it. Carleen noted the proposal she and Emory favored would guarantee Emory $317,474.37, almost $100,000 more than under Steven's proposal, which she alleged did not "guarantee the yield, . . . ensure the safekeeping of the money, and [did] not ensure future financial stability for Emory."

In her own letter to the court, Emory stressed that she had reviewed the Ringler options with her mother and preferred the plan with the longer-term payout because it would ensure she would "have the money at the ages in which [she would] need it the most." Emory advised the court she would "not

A-0715-19

be needing $233,550.82 at 18 when [she will] just [be] going to college." She also advised she did not want her father to control her funds.

Steven did not submit a certification explaining his reasons for advocating Emory receive the full amount of the settlement on her turning eighteen. Instead, his counsel submitted a short letter brief asserting the judge did "not have the authority to substitute his judgment for that of the guardian ad litem" pursuant to Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 564 (App. Div. 2007) (holding a "judge's inherent parens patriae powers do not permit a judge to change the terms of the settlement contract submitted to it without the consent of the parties").

The judge approved Carleen and Emory's proposed structure, which, by the time the judge executed the amended order that Steven's counsel submitted as recommended by Ringler, provided Emory a total guaranteed distribution of $342,986.68, based on an increase in the final payment Emory will receive at age thirty from $192,474.37 to $222,986.68. This appeal followed.[5]

In his brief to this court, Steven does not explain why he favored a structure resulting in Emory receiving the entirety of the settlement proceeds

_____

[5] Steven's counsel advised the settlement proceeds have been invested with Pacific Life on an interim basis pending resolution of the appeal, thereby preserving the payout schedule the trial court ordered.

A-0715-19

shortly after her eighteenth birthday. In his amended case information statement, however, Steven states he had "made clear" before the friendly hearing "that any settlement would need to make the award available for active financial management" when Emory turned eighteen. He contended the judge's order approving the structure favored by Carleen and Emory "tied up" the proceeds for over fifteen years, "making it impossible for the guardian to fulfill his role to explore and take advantage of any investment strategy more beneficial to [Emory]." He reprises the argument that "[i]t is the duty/right/ power of the guardian ad litem to decide how to invest" the proceeds of the settlement the court approved at the friendly hearing, relying on our opinion in Impink.

We think Impink distinguishable. Like this case, Impink involved a minor suffering physical injuries resulting from an accident at someone else's home. 396 N.J. Super. at 558. Also like this case, the defendants had a homeowners policy with limits of $300,000. Ibid. But the similarities between the two cases end there. In Impink, the guardian ad litem, the infant plaintiff's mother, demanded the defendants' policy limits, to be paid in a structured settlement. Ibid. The defendants' insurance carrier, however, was only willing to offer a structured settlement if the plaintiff agreed to accept

$250,000. Ibid. The guardian ad litem finally agreed to settle "for $300,000 'cash.'" Ibid.

At the friendly hearing, however, the guardian ad litem sought, not only approval of the settlement, but that the carrier pay the net proceeds directly into a structured settlement for the benefit of the injured minor — the guardian ad litem's original demand, which the carrier had refused. Id. at 559. The carrier objected, arguing it had not agreed to a structured settlement of $300,000. Ibid. The trial court ordered the carrier to purchase an annuity for the benefit of the minor, reasoning a structured settlement was in the minor's best interest, and that the court had the inherent power in a friendly proceeding "to approve not just the amount of the settlement, but also the manner in which it is to be paid." Ibid.

We reversed. We found the trial court had overstepped its authority in changing the settlement from a lump sum cash payment, a bargained for term, to a structured settlement. Id. at 560. We accepted the carrier's argument that it had not desired to enter into a structure "without some financial consideration" and found its concern about its future liability in the event the structure should fail, a legitimate one, noting the carrier was free to "determine what issues are of material importance to it." Id. at 564.

Here, of course, the carrier agreed to pay $275,000 in a structured settlement in which the net proceeds would be used to purchase an annuity guaranteeing future periodic payments to Emory. There is no dispute between Liberty Mutual, defendants' homeowners carrier, and Steven over the terms of the settlement as there was in Impink. The carrier had no preference among the structure options presented and has expressly taken no position on this appeal. The dispute on this record is between Steven and Carleen, Emory's parents, over which among the structured settlements the carrier agreed to fund, better provided for Emory's future needs.

In our view, that dispute was clearly one within the trial court's authority to resolve under Rule 4:44-3, particularly in light of the agreement between the parties before the litigation began that Steven would act as the guardian ad litem for Emory, that Steven's litigation counsel would "consult with both parents regarding the matter on an ongoing basis," and that "any recovery would be deposited with the Surrogate."

We are also satisfied the trial judge did not abuse his discretion in approving the structure favored by Carleen and Emory over the one favored by Steven, chosen so as "to make the award available for active financial management" when Emory turned eighteen. Emory expressly advised the

9

court she did not wish to be saddled with the active management of so large a sum of money at eighteen "when [she will] just [be] going to college," and was explicit that she did not want her father to control her funds.

Emory, of course, will be entitled to the funds and the annuity upon attaining her majority at eighteen. See In re Guardianship of A.D.L., 208 N.J. Super. 618, 624 (App. Div. 1986) (citing N.J.S.A. 3B:12-54). We disagree the structure the court chose made "it impossible for the guardian to fulfill his role to explore and take advantage of any investment strategy more beneficial to [Emory]." Steven was not proposing to manage the funds during Emory's minority, and he has no right or obligation to do so on Emory turning eighteen. See S.T. v. 1515 Broad St., LLC, 455 N.J. Super. 538, 553 (App. Div. 2018) (noting the function of a guardian ad litem is limited to the litigation for which he was appointed) rev'd on other grounds, 241 N.J. 257 (2020).

Because the circumstances under which the parties agreed to permit Steven to act as guardian ad litem in this action provided both parents a role in the prosecution of this suit, we find no error in the court having solicited both of their views as to the form of the structured settlement entered into by defendants, see Norton v. Vena, 67 N.J. 318 (1973) (affirming trial court decision vacating "friendly" judgment for failure to obtain consent of minor's

mother along with that of minor's father serving as guardian ad litem) and no error in the court's choice of structure in Emory's best interests.  See Zukerman by Zukerman v. Piper Pools, Inc., 232 N.J. Super. 74, 96 (App. Div. 1989) (noting rule requiring judicial approval of infant settlements "is essentially designed to protect the best interests of the child").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0715-19