NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3155-21

BRANDON MEREDITH HARDY,

      Plaintiff-Appellant,

v.

SUSAN D. JACKSON,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **August 9, 2023**
>
> **APPELLATE DIVISION**

Submitted March 28, 2023 – Decided August 9, 2023

Before Judges Messano, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2250-21.

Brandon Meredith Hardy, appellant pro se.

Malamut & Associates LLC, attorneys for respondent (Robert N. Wright, Jr., on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

Plaintiff Brandon Hardy and the person he wants to marry are incarcerated at different federal prisons.  Plaintiff filed a complaint claiming defendant Susan D. Jackson, the New Hanover Township Municipal Clerk and

Registrar, had violated his civil rights by applying the requirement in N.J.S.A. 37:1-7 and -8 that couples appear in person to obtain a marriage license. Plaintiff appeals an order denying his motion for a preliminary injunction and granting defendant's cross-motion to dismiss the complaint. We affirm.

I.

Because of the early procedural stage of the case, we accept the facts alleged in the complaint as true, giving plaintiff "every reasonable inference of fact." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 107 (2019) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). We begin with a summary of those facts and the applicable statutes.

N.J.S.A. 37:1-7 authorizes a "licensing officer" to issue a marriage license to "contracting parties who . . . personally . . . apply therefor . . . ." Pursuant to N.J.S.A. 37:1-8, the licensing officer "shall, before issuing a marriage . . . license, require the contracting parties . . . to appear before him and subscribe and swear to an oath attesting the truth of the facts respecting the legality of the proposed marriage . . . ." Both statutes contain a provision for individuals who intend to be married pursuant to N.J.S.A. 37:1-17.3, a statute that applies to "member[s] of the Armed Forces of the United States or the National Guard who [are] stationed overseas and serving in a conflict or a

2

war and [are] unable to appear for the licensure and solemnization of [their] marriage." Pursuant to N.J.S.A. 37:1-17.3, a member of the Armed Forces serving overseas "may enter into [a] marriage . . . by the appearance of an attorney-in-fact, commissioned and empowered in writing for that purpose through a power of attorney." Under N.J.S.A. 37:1-7 and -8, that attorney-in-fact may appear on behalf of the Armed Forces member serving overseas to obtain the marriage license and take the required oath. Thus, except for certain members of the Armed Forces, people who want to get married must appear in person before the licensing officer to take the required oath and to obtain a marriage license.

Plaintiff is incarcerated at a federal prison located in Fort Dix, New Jersey. He wants to marry Matthew J. Galloway, who is incarcerated in a federal prison located in Yazoo City, Mississippi. Apparently aware of the in-person requirement to obtain a marriage license, plaintiff sent a letter to defendant "seeking alternative avenues to marry Galloway . . . includ[ing] floating the possibility of a marriage-by-proxy."[1] In a July 13, 2021 letter, defendant advised plaintiff "there will be no way that we can process a marriage application for you and your husband-to-be." She informed plaintiff

---

[1] We take that description from the complaint. A copy of the letter was not included in the record.

that under New Jersey law, "proxies are only for the [m]ilitary [p]ersonnel if one party is stationed in another location and they must go through a difficult process to get it done." She recommended plaintiff "see what the other state's requirements are to get married while incarcerated."

In a July 19, 2021 letter, plaintiff responded, asking if "there [was] any last recourse available that would allow" him and Galloway to marry and suggested defendant's "office" consult with "Township legal counsel." He contended they had a "constitutional right to marriage" and questioned why they could not proceed "in the same manner New Jersey state law enables Armed Service members stationed/deployed worldwide to exercise their right to marry."

Defendant replied in a July 26, 2021 letter, stating the applicable statute "state[s] that both applicants must be present in person, along with one (1) witness over [eighteen] years of age, in the municipality in which one or both applicants reside . . . ." She informed him he would have to wait until both he and Galloway were "in New Jersey in the municipality in which [he] reside[s] in order to file." She then suggested he write to the State Registrar and the Department of Health or speak to his local legislator if he wanted to pursue the matter further. She concluded that "the law is the law" and recommended Galloway inquire about Mississippi's laws.

In an August 2, 2021 letter to State Registrar Vincent Arrisi, plaintiff advised that because he and Galloway were incarcerated, they were "absolutely unable to fulfill the requirements [to obtain a marriage license] . . . [and] thus, completely barred from exercise of [their] First Amendment Right to Marriage." He requested an exemption from the requirements so that he and Galloway could marry.

In an August 11, 2021 letter, Arrisi confirmed New Jersey law "requires both applicants to appear before the licensing officer for the application process, take an oath in front of the licensing officer and have a witness sign the application on behalf of both applicants." He noted that virtual applications had been permitted pursuant to Executive Order No. 135 during the COVID-19 related state of emergency, but that provision had been rescinded on July 7, 2021. He suggested plaintiff research other states' laws regarding virtual marriage licenses or seek a court order.

On October 18, 2021, plaintiff filed a verified complaint against defendant, citing the New Jersey Civil Rights Act (CRA), N.J.S.A. 10:6-1 to -2. Plaintiff alleged "[d]efendant's failure to process and issue a license for [p]laintiff and Galloway to join together in marriage violates [plaintiff's] (and Galloway's) rights and constitutes a continuing violation of Due Process and Equal Protection Clauses under the Fourteenth Amendment to the United

5

States Constitution." For relief, plaintiff sought a "[p]reliminary and permanent injunction ordering [d]efendant to cease excluding [p]laintiff and individuals incarcerated within Burlington County . . . who seek application to marry individuals out-of-state and/or [are] unable to otherwise physically appear within the jurisdiction consequent [to] incarceration/detention . . . ."

Plaintiff moved for a preliminary injunction, enjoining defendant from "[r]equiring [p]laintiff . . . and . . . Galloway[] [to] physically appear before a Burlington County New Jersey License Officer as pre-requisite for obtaining a license to marry in light of their incarceration precluding which." Plaintiff's motion was not supported by a certification from either plaintiff or Galloway indicating they had submitted an application to marry pursuant to applicable federal regulations. See, e.g., Bureau of Prison, Dep't of Just., Marriages of Inmates, Application to marry, 28 C.F.R. § 551.13 (2022) ("A federal inmate confined in a Bureau institution who wants to get married shall submit a request to marry to the inmate's unit team."). Nor was it supported by a certification from Galloway demonstrating his intent to marry plaintiff. See Bureau of Prison, Dep't of Just., Marriages of Inmates, Eligibility to marry, 28 C.F.R. § 551.12 ("An inmate's request to marry shall be approved provided: . . . (c) The intended spouse has verified, ordinarily in writing, an intention to marry the inmate . . . .").

6

After hearing argument, the motion judge rendered a decision on the record. Acknowledging "the interplay of the State statute and the overarching concept . . . that marriage is a social good," the judge found "[t]he legislature outlined how things had to happen" and "it's something that the legislature has to change, not a judge." The judge concluded he was "constrained to deny [plaintiff's] application and to . . . grant . . . defendant's application."

On appeal, plaintiff argues the motion judge had the ability to use his equitable powers to enjoin defendant's "continued enforcement of the 'in-person' marriage pre-condition," which plaintiff contends was "unconstitutional" as applied to him. We disagree and affirm.

II.

We review a decision on a Rule 4:6-2(e) dismissal motion "de novo, without deference to the judge's legal conclusions." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 415 (App. Div. 2020). Rule 4:6-2(e) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." The Rule tests "the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart, 116 N.J. at 746. To defeat a Rule 4:6-2(e) motion, a plaintiff does not have to prove his or her case but must establish the complaint contains "allegations which, if proven, would constitute a valid cause of action." Kieffer v. High Point Ins. Co., 422 N.J.

Super. 38, 43 (App. Div. 2011) (quoting Leon v. Rite Aid Corp., 340 N.J. Super. 462, 472 (App. Div. 2001)). When a complaint "fail[s] to articulate a legal basis entitling [the] plaintiff to relief," the "court must dismiss the plaintiff's complaint." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).

When interpreting a statute, a court must consider the statute's plain language, which is the "best indicator" of the legislature's intent in enacting the statute. DiProspero v. Penn, 183 N.J. 477, 492 (2005); see also Savage v. Township of Neptune, 472 N.J. Super. 291, 305 (App. Div. 2022). The plain language of N.J.S.A. 37:1-7 and -8 clearly shows the Legislature intended to require people who want to be married to appear in person before the licensing officer to take an oath regarding the validity of the marriage and to apply for a marriage license. The plain language of N.J.S.A. 37:1-17.3 clearly shows the Legislature intended to provide a marriage-by-proxy procedure only for members of the Armed Forces and National Guard serving overseas.

Plaintiff does not dispute that interpretation of the statutes. Instead, he contends the enforcement of the in-person requirement was "unconstitutional" as applied to him and that the motion judge could have used his equitable powers to enjoin the enforcement of that statutory requirement. Plaintiff is wrong on both points.

The trial judge did not find the requirement to be unconstitutional, and plaintiff has not cited to any case finding it unconstitutional. Plaintiff instead relies on the CRA, the Fourteenth Amendment of the United States Constitution, and Turner v. Safley, 482 U.S. 78 (1987).

The CRA provides a cause of action to a party who has been deprived of a right secured by the federal or state constitution by a person acting under color of law. N.J.S.A. 10:6-2. The Act is modeled after the federal Civil Rights Act, 42 U.S.C.A. § 1983, and "provid[es] the citizens of New Jersey with a State remedy for deprivation of or interference with the civil rights of an individual." Harris v. City of Newark, 250 N.J. 294, 304-05 (2022) (quoting Perez v. Zagami, LLC, 218 N.J. 202, 212 (2014)).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' meaning that all persons similarly situated should be treated alike." State v. Pimentel, 461 N.J. Super. 468, 489 (App. Div. 2019) (quoting City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). When a statute "imposes on a fundamental right, the law is subject to strict scrutiny review, and will be sustained under the Equal Protection Clause only if it is narrowly tailored to serve a compelling state interest." Ibid. Laws are presumptively valid, and the Legislature is owed substantial deference.

Commc'ns Workers of Am., AFL-CIO v. N.J. Civ. Serv. Comm'n, 234 N.J. 483, 514 (2018). A challenger to a law must show that the law's "repugnancy to the constitution is clear beyond a reasonable doubt." Ibid. (quoting State v. Buckner, 223 N.J. 1, 14 (2015)). "To overcome the strong presumption of validity and 'deference [due] to any legislative enactment,' the challenger must demonstrate -- 'unmistakably' -- that the law in question 'run[s] afoul of the Constitution.'" Buckner, 223 N.J. at 14 (alterations in the original) (quoting Lewis v. Harris, 188 N.J. 415, 459 (2006)).

In Turner v. Safley, 482 U.S. at 82, a prison regulation permitted inmates to marry but only with the prison superintendent's approval, which was given only when there were "compelling reasons to do so" such as pregnancy. The Supreme Court found the regulation unconstitutional: "It is undisputed that Missouri prison officials may regulate the time and circumstances under which the marriage ceremony itself takes place. . . . however, the almost complete ban on the decision to marry is not reasonably related to legitimate penological objectives." Id. at 99. The Court held that although inmates had the right to marry, that right was still "subject to substantial restrictions as a result of incarceration." Id. at 96.

The statutes plaintiff challenges are not prison regulations that create an "almost complete ban on the decision to marry" and that are "not reasonably

related to legitimate penological objectives." Id. at 99. Instead, they are laws that apply to all individuals who want to marry and are reasonably related to the legitimate goal of ensuring the validity of marriages. That the Legislature chose to provide a marriage-by-proxy procedure for those who serve in the Armed Forces and National Guard overseas does not render the statutes unconstitutional.

Plaintiff's argument that the motion judge could have used his equitable powers to enjoin defendant's enforcement of the statutory in-person requirement is without merit. A court's equitable authority is not boundless. "[I]n all cases, equity follows the law." West Pleasant-CPGT, Inc. v. U.S. Home Corp., 243 N.J. 92, 108 (2020) (quoting Berg v. Christie, 225 N.J. 245, 280 (2016)). "[E]quity follows the law" is an "equitable maxim . . . which instructs that as a rule a court of equity will follow the legislative and common-law regulation of rights, and also obligations of contract." Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp., 100 N.J. 166, 183 (1985); see also Impink ex rel. Baldi v. Reynes, 396 N.J. Super. 553, 561 (App. Div. 2007) (finding "it is well-established that 'equity follows the law,' particularly where a statute is involved").

As we recently held in Board of Education of East Newark in the County of Hudson v. Harris, 467 N.J. Super. 370, 382 (App. Div. 2021),

11

Although "the maxim [equity follows the law] does not bar the crafting of a remedy not recognized by legislation or found in the common law, . . . it does prevent the issuance of a remedy that is inconsistent with recognized statutory or common law principles." [In re Est. of Shinn, 394 N.J. Super. 55, 67 (App. Div. 2007)].  Stated differently, equity may "soften[ ] the rigor of the law," Giberson v.  First Nat'l Bank of Spring Lake, 100 N.J. Eq. 502, 507 (Ch. 1927), but "will not create a remedy that is in violation" of it. Shinn, 394 N.J. Super. at 67.  "Undoubtedly, equity follows the law more circumspectly in the interpretation and application of statute law than otherwise."  Giberson, 100 N.J. Eq. at 507.  "Were it otherwise, a judge's personal proclivities alone could negate the will of the Legislature."  Shinn, 394 N.J. Super. at 68.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION